TEMPO, INC v RAPID ELECTRIC SALES & SERVICE, INC

Docket No. 65442. Submitted August 18, 1983, at Grand Rapids.— Decided February 7, 1984. Leave to appeal applied for.

Tempo, Inc., is a Michigan corporation whose sole shareholder, F. G. Budnick, is the general partner of West Highland Limited Dividend Housing Association. West Highland contracted with Tempo for the construction of an apartment project. Tempo contracted with Rapid Electric Sales & Service, Inc., Ronald Lindberg, doing business as Rapid Electric, Rapid Electric Sales & Service, and Rapid Heating and Insulation (collectively "Rapid"), for the performance of all electrical work in connection with the project. Ronald Lindberg is the sole shareholder of Rapid Electric Sales & Service, Inc. Rapid filed mechanics' liens on the project property on the ground that Tempo had failed to pay remaining amounts due for electrical work performed. West Highland and Tempo brought an action against Rapid in the Kent Circuit Court for an order invalidating the liens and a judgment for damages for breach of contract for failure to perform according to the written plans and specifications and for defective performance. Rapid filed a counterclaim asserting that the written plans and specifications had been orally modified, that it had performed in accordance with the contracts as modified, and that, therefore, Tempo's failure to pay was not excused. Rapid counterclaimed that plaintiffs were liable for damages for breach of contract or unjust enrichment, and also for fraud. A jury found no cause of action as to plaintiffs' claim for damages but returned a verdict for defendants in the amount of $180,000. The court, George R. Cook, J., decided the liens were valid, found defendants entitled to a

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 850.
[2] 5 Am Jur 2d, Appeal and Error § 881.
[3] 37 Am Jur 2d, Fraud and Deceit § 456.
[4] 22 Am Jur 2d, Damages § 172.
[5] 53 Am Jur 2d, Mechanics' Liens §§ 234, 235.
[6] 5 Am Jur 2d, Appeal and Error § 545.
[7] 22 Am Jur 2d, Damages § 245.
[8] 60 Am Jur 2d, Partnership § 160.

total lien amount of $102,000, and entered a judgment. Plaintiffs appealed and defendants cross-appealed. *Held:*

1. Plaintiffs made a post-trial motion for a new trial or *remittitur,* claiming that the court committed evidentiary and instructional errors and that the amount of damages awarded by the jury was excessive. This motion was denied by the court without explanation. The court committed error in failing to explain its reasons for denial of the motion. However, that error did not require a remand for an explanation in this case. The nature of the issues raised in plaintiffs' motion for new trial were not such that the Court of Appeals needed a statement of the trial court's reasons to determine whether it erred in denying the motion.

2. Plaintiffs argued that the court committed reversible error in allowing defendants, over plaintiffs' objection, to present testimony to the effect that Tempo had been involved in similar disputes with other subcontractors as to the scope of the latter's contractual obligations and had refused to pay some other subcontractors. Evidence of similar acts is admissible in a fraud case as substantive evidence of fraudulent intent, scheme, or plan or absence of mistake. The evidence was properly admitted in connection with defendant's fraud claim.

3. The court properly refused to admit irrelevant evidence proffered by plaintiffs.

4. The trial court's failure to specifically instruct the jury that the court had granted a directed verdict for plaintiffs on defendants' claims for fraud and exemplary damages does not require reversal. The instructions given by the court provided the jury with sufficient guidance.

5. The court did not err in denying plaintiffs a new trial or *remittitur* on the ground that the jury verdict was excessive. Damages for lost profits may be properly awarded in appropriate cases where the method of calculation of the damages, while perhaps somewhat speculative, has a reasonable degree of certainty and is not based solely on conjecture and speculation.

6. A mechanics' lien is not lost because the amount claimed is excessive except where the excessive claim is made in bad faith. Where the excessive claim is due to a good faith mistake, the appropriate remedy is to reduce the amount of the lien to the appropriate amount. The court did not err in finding that the lien amount claimed by defendants was excessive because of a good faith mistake in calculation.

7. Plaintiffs waived any error in the entry of judgment against West Highland by delaying raising the issue.

8. Exemplary damages may not be awarded in an action for

breach of a commercial contract, absent allegation and proof of tortious conduct existing independent of the breach. The court did not err in directing a verdict denying exemplary damages.

9. Any error in dismissing Budnick as a party was harmless, since Budnick, as a general partner of West Highland, is subject to personal liability on defendants' judgment against West Highland.

Affirmed.

1. TRIAL — RECORD — APPEAL — COURT RULES.

A trial court is required by court rule to give a concise statement of its reasons in ruling on a motion for a new trial; however, the absence of a court's reasons for denying a motion for a new trial does not necessarily require reversal or a remand (GCR 1963, 527.7).

2. EVIDENCE — APPEAL.

The admission of evidence in a trial is within the trial judge's discretion and a judge's ruling on the evidence offered should not be upset absent a clear abuse of discretion.

3. FRAUD — EVIDENCE — SIMILAR ACTS — RULES OF EVIDENCE.

Evidence of similar acts is admissible in a fraud case as substantive evidence of fraudulent intent, scheme or plan, or absence of mistake (MRE 404[b]).

4. DAMAGES — LOST PROFITS.

Damages for lost profits may be properly awarded in appropriate cases where the method of calculation of the damages, while perhaps somewhat speculative, has a reasonable degree of certainty and is not based solely on conjecture and speculation.

5. MECHANICS' LIENS — GOOD FAITH MISTAKE.

A mechanics' lien is not lost because the amount claimed is excessive except where the excessive claim is made in bad faith; where the excessive claim is due to a good faith mistake, the appropriate remedy is to reduce the amount of the lien to the appropriate amount.

6. TRIAL — APPEAL.

A party cannot sit back and, after the jury decides against him, claim error after he had been given the fullest opportunity to correct the alleged error at the trial.

7. DAMAGES — EXEMPLARY DAMAGES — CONTRACTS.

Exemplary damages may not be awarded in an action for breach

of a commercial contract, absent allegation and proof of tortious conduct existing independent of the breach.

8. PARTNERSHIP — LIABILITY OF PARTNERS.

All partners are personally liable for the debts and obligations of a partnership.

*Mohney, Goodrich & Titta, P.C.* (by *Robert J. Dugan)*, for plaintiff.

*Baxter & Hammond* (by *Stephen D. Turner* and *Robert S. Lipak)*, for defendants.

Before: DANHOF, C.J., and MacKENZIE and M. E. DODGE,* JJ.

PER CURIAM. Plaintiff and counterdefendant West Highland Limited Dividend Housing Association (West) is a partnership of which counterdefendant F. G. Budnick is the general partner. Budnick is also the sole shareholder of Tempo, Inc., which entered into a contract with West for the construction of an apartment project on property owned by West. Tempo, as the general contractor for this construction project, entered into written contracts with defendants and counterplaintiffs Rapid Electric Sales & Service, Inc., Ronald Lindberg, doing business as Rapid Electric, Rapid Electric Sales & Service, and Rapid Heating and Insulation (collectively Rapid) for the performance of all electrical work in connection with the project. Defendant and cross-plaintiff Ronald Lindberg is the sole shareholder of Rapid Electric Sales & Service, Inc.

Rapid filed mechanics' liens on the project property on the ground that Tempo had failed to pay remaining amounts due for electrical work performed. West and Tempo then filed suit seeking an

* Circuit judge, sitting on the Court of Appeals by assignment.

order invalidating the mechanics' liens and a judgment for damages on the ground that Rapid had breached the contracts by failing to perform according to the written plans and specifications and that no further amounts were owed in light of Rapid's defective performance. Rapid filed a counterclaim asserting that the written plans and specifications had been orally modified, that it had performed in accordance with the contracts as modified, and that, therefore, Tempo's failure to pay was not excused. Rapid counterclaimed that plaintiffs were liable for damages for breach of contract or unjust enrichment, and also for fraud. A jury found no cause of action as to plaintiffs' claim for damages but returned a verdict for defendants in the amount of $180,000. The court decided the liens were valid and found defendants entitled to a total lien amount of $102,000. From a judgment incorporating the above, plaintiffs appeal and defendants cross-appeal.

The evidence adduced at trial was essentially as follows. According to defendants, prior to Rapid's submission of bids and execution of the contracts, Lindberg and Budnick orally agreed to some modifications of the written plans and specifications and, at the time the contracts were executed, Budnick told Lindberg these changes would be reflected in written bulletins which had not yet been prepared. When these bulletins were issued, they did not contain the modifications agreed to, but Budnick assured Lindberg that he would take care of the matter and, relying on this assurance, Rapid commenced work. After Rapid had completed much of the work, Tempo insisted that the electrical work conform with the written plans and specifications, denying that the oral modifications existed, and refused to make any further

payments unless Rapid gave Tempo a credit against the amounts owed because of the deviations. Rapid refused to give any credit, and Tempo stopped further payments. According to plaintiffs, Budnick never orally agreed to the modifications as claimed by Lindberg and, when Budnick discovered that Rapid was not doing the work in accordance with the written plans and specifications, Budnick asked Rapid to correct the deviations or agree to a credit and, since Rapid refused, Tempo justifiably stopped making any further payments.

I

Plaintiffs made a post-trial motion for a new trial or *remittitur,* claiming that the court committed evidentiary and instructional errors and that the amount of damages awarded by the jury was excessive. This motion was denied by the court without explanation. Plaintiffs assert that, because the court failed to give its reasons for denying their motion, this Court must remand for an explanation. A trial court is required by court rule to give a concise statement of its reasons in ruling on a motion for a new trial. GCR 1963, 527.7. However, the absence of a court's reasons for denying a motion for a new trial does not necessarily require reversal or a remand. See *Frederick v Detroit,* 370 Mich 425, 439; 121 NW2d 918 (1963); *Eger v Helmar,* 272 Mich 513, 520; 262 NW 298 (1935). The nature of the issues raised in plaintiffs' motion for new trial are not such that this Court needs a statement of the trial court's reasons to determine whether it erred in denying the motion. Thus, we find a remand unwarranted.

II

Turning to the merits of the issues raised in

plaintiffs' motion for a new trial and reiterated on appeal, plaintiffs argue that the court committed reversible error in allowing defendants, over plaintiffs' objection, to present testimony to the effect that Tempo had been involved in other disputes with subcontractors arising out of this construction project. More specifically, this testimony indicated that Tempo had similar disputes with other subcontractors as to the scope of the subcontractors' obligations and had refused to pay some other subcontractors. A trial court's rulings on the admissibility of evidence will not be reversed by this Court absent an abuse of discretion. *Jackovich v General Adjustment Bureau, Inc,* 119 Mich App 221, 238; 326 NW2d 458 (1982); *Anderson v Harry's Army Surplus, Inc,* 117 Mich App 601, 608; 324 NW2d 96 (1982). Evidence of similar acts may be admissible as substantive evidence in a civil case under MRE 404(b). *Scott v Hurd-Corrigan Moving & Storage Co, Inc,* 103 Mich App 322, 341-342; 302 NW2d 867 (1981), *lv den* 412 Mich 881 (1981); *Birou v Thompson-Brown Co,* 67 Mich App 502, 512; 241 NW2d 265 (1976), *lv den* 397 Mich 808 (1976). For example, in a case involving a claim of fraud, such evidence is admissible to prove fraudulent intent and scheme or plan. *Scott, supra.*

In the present case, at the time this testimony was admitted, defendants' claim of fraud was viable and had not yet been dismissed by the court by directed verdict. The gist of defendants' fraud theory was that Budnick orally agreed to modifications of the written plans and specifications, inducing defendants to submit lower bid figures and to execute the contracts and that Budnick made these representations with the intention of later denying the existence of the oral modifications.

The motive asserted by defendants was that Budnick knew the project was over budget and sought to reduce costs by later demanding that defendants' work comply with the more expensive requirements of the written plans and specifications or that defendants agree to a credit against the contract price. Thus, this similar acts testimony was properly admitted as relevant to defendants' claim of fraud. In addition, another issue in the case, as reflected in plaintiffs' closing argument and the court's instructions, was whether there had simply been a mutual misunderstanding between Budnick and Lindberg as to whether oral modifications had been agreed to, and this similar acts testimony was admissible as tending to show the "absence of mistake", MRE 404(b), by suggesting the improbability that Tempo would have had such a number of "mutual misunderstandings" with its subcontractors.

## II

Plaintiffs also contended in their motion for a new trial that the trial court erred in excluding their proffered evidence of another lawsuit brought against defendants in which defendants unsuccessfully counterclaimed for damages for harm to business reputation. Plaintiffs sought to introduce evidence of this lawsuit as relevant to disproving defendants' claim for damages for harm to business reputation in the present case. However, in the present case defendants did not seek damages for harm to business reputation in general, but rather more specifically for damages due to the loss of credit and loss of bonding which resulted from Tempo's actions. Plaintiffs in their offer of proof made no showing that it was this other dispute involving defendants, and not Tem-

po's actions, which was the sole or partial cause of the loss of credit and loss of bonding for which defendants sought damages in the present case. Consequently, plaintiffs' offer of proof failed to establish any connection between the other lawsuit and the particular damages claimed by defendants in the instant case, and therefore the proffered evidence was irrelevant and properly excluded by the trial court. MRE 402.

## IV

Plaintiffs also moved for a new trial on the ground that the court erred in failing to instruct the jury that it had granted a directed verdict for plaintiffs on defendants' theory of fraud and claim for exemplary damages and that the jury was, therefore, not to consider these issues. We find no reversible error. Although during voir dire and in his opening statement counsel for defendants stated that defendants were seeking exemplary damages for mental harm suffered by Lindberg, he indicated that the jury could award such damages only if the court so permitted. Defendants' counsel in closing argument did not argue fraud or request exemplary damages. Moreover, under the instructions given by the court, the jury could not possibly have believed that they could find for defendants on a theory of fraud and award exemplary damages. The court instructed the jury that if they found Tempo had breached the contract then Tempo was liable for all damages which naturally, directly, and proximately resulted from the breach or that, if they found no valid contract existed because of a mutual mistake of material fact, they could award Rapid damages for the reasonable value of any work performed which had not been compensated for by Tempo. While ideally the court

might have affirmatively instructed the jury not to consider fraud or exemplary damages, the instructions given by the court provided the jury with sufficient guidance and thus reversal is unwarranted. See *Huffman v First Baptist Church of Flushing,* 355 Mich 437, 445-447; 94 NW2d 869 (1959).

## V

Plaintiffs assert that the court erred in denying their motion for a new trial or *remittitur* on the ground that the jury's award of damages to defendants was excessive. The jury's award of $180,000 appears to have included an amount for consequential damages since Lindberg testified that Tempo owed $102,000 on the written contract price or $114,000 for the reasonable value of work performed. Plaintiffs argue that the evidence presented by defendants as to consequential damages for loss of credit, lost profits due to loss of bonding, and additional interest due on payments to suppliers was grossly speculative. We disagree.

With respect to damages for loss of credit, Lindberg testified that his bank informed him that, due to the dispute with Tempo, his previously established line of credit was being withdrawn. Consequently, he had to obtain an SBA loan for which the interest rate was higher and would amount to $90,000 more than under his previous credit arrangement. Regarding additional interest, Lindberg testified that Tempo's failure to pay caused Rapid to lose discounts by not being able to pay its suppliers promptly, and a discount of 2 percent on $225,000 was lost, amounting to $4,500. Clearly, these damages figures were based on objective criteria and mathematical calculation, not mere speculation. If Lindberg's calculations were in er-

ror, plaintiffs were free to present their own evidence so demonstrating.

Lindberg also testified that Tempo's actions caused Rapid to lose its bonding, which prevented Rapid from being able to bid on other jobs. Lindberg estimated his lost profits at $26,250, which figure he derived by determining which jobs he would have bid on during that period had he had bonding, and estimating that he would have been awarded contracts on one out of every three to four jobs bid, with a profit margin of 3 percent. We find this evidence sufficient to warrant an award of damages for lost profits. While perhaps to some degree speculative, this method of calculating lost profits had a reasonable degree of certainty and was not based solely on conjecture and speculation. *Stimac v Wissman,* 342 Mich 20, 28; 69 NW2d 151 (1955); *Wolverine Upholstery Co v Ammerman,* 1 Mich App 235, 244-246; 135 NW2d 572 (1965).

Finally, plaintiffs argue that these damages could have been caused by factors other than Tempo's actions. We find that Lindberg's testimony was sufficient for the jury to conclude that these damages were the natural and proximate result of Tempo's breach. *Sattler v Fisher Contracting Co,* 30 Mich App 617, 622; 186 NW2d 875 (1971). Plaintiffs were free to present their own evidence and to argue that other factors were in fact the cause of these damages.

## VI

At the conclusion of the jury trial, the trial court addressed the question of the validity of the mechanics' liens filed by defendants. The liens filed were in the total amount of $161,629. Plaintiffs argued that, since by Lindberg's own testimony

only $102,000 was owed on the contract price, the liens were filed in bad faith and consequently defendants forfeited any right to a lien. The trial court instead simply reduced the total lien amount to $102,000. Even where the amount of a lien filed is found to be excessive, the lien is lost only where bad faith is evident; if the error in the amount was due to a good faith mistake, the appropriate remedy is simply to reduce the amount of the lien. *Georgia-Pacific Corp v Central Park North Co,* 394 Mich 59, 63-64; 228 NW2d 380 (1975); *Morman v Ryskamp,* 235 Mich 140; 209 NW 52 (1926). In the present case, defendants submitted to the trial court affidavits reflecting how the lien amounts were calculated. While our review of these affidavits leads us to conclude that an improper method of calculation was used, no bad faith is evident. All of the items listed were for the costs of labor and materials actually incurred by defendants relative to this project, unlike *Sacchetti v Recreation Co,* 304 Mich 185, 192; 7 NW2d 265 (1943), relied on by plaintiffs, where the lien included amounts for labor not actually performed and materials not in fact furnished.

## VII

The final issue raised by plaintiffs in their appeal is that the court improperly entered a judgment for money damages against not only Tempo, but West as well. Plaintiffs argue that West could not be considered liable on either the breach of express contract or unjust enrichment theories presented to the jury and that the only remedy defendants might have against West is a mechanics' lien. We need not address the substantive merits of this claim for we find that plaintiffs waived any claim of error. At no time prior to

submission of the case to the jury did plaintiffs seek the dismissal of West as a party vis-à-vis defendants' claims for monetary damages. Moreover, plaintiffs failed to request any separate instructions relative to the liability of West and, indeed, even stipulated that, for purposes of the instructions and jury deliberations, Tempo and West could be jointly referred to as Tempo and that the jury could return a verdict for Tempo or Rapid, with no further distinction being necessary. Thus, it is clear that, even assuming some or all of the jury's award of $180,000 could not properly be entered against West, the error was of plaintiffs' own doing. "A party cannot sit back and after the jury decides against him claim error after he had been given the fullest opportunity to correct any alleged error at the trial." *Baldwin v Nall,* 323 Mich 25, 31; 34 NW2d 539 (1948). We further note that plaintiffs did not raise this claim of error in their motion for new trial or objections to entry of judgment filed soon after the jury's verdict, but rather delayed another five months before filing an additional objection to entry of judgment raising this claim.

## VIII

We now address the issues presented by defendants in their cross-appeal, first of which is that the court erred in granting a directed verdict for plaintiffs on defendants' fraud theory of liability and, consequently, refusing to instruct on defendants' fraud theory and claim for exemplary damages for mental harm suffered by Lindberg. Defendants' fraud theory was that, when Budnick orally agreed to modifications of the plans and specifications and promised to incorporate these modifications in written bulletins, he had no present inten-

tion to abide by these promises and made these representations to deceive defendants and to induce defendants to make the bids and enter into the contracts. Defendants admit that they have no desire to disturb the jury's $180,000 award of damages for economic losses, and raise this claim of error only for the purpose of procuring a remand on the issue of exemplary damages based on their fraud theory. Thus, the crux of the issue before us is whether defendants were entitled to jury consideration of exemplary damages based on their fraud theory.

In cases involving breach of a commercial contract, exemplary damages are not recoverable, with the only exception being where there is "proof of tortious conduct existing independent of the breach". *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 420-421; 295 NW2d 50 (1980). In the present case, while defendants did present proof of tortious conduct in the form of fraud, the remaining question is whether that fraudulent conduct was "independent of the breach". *Kewin, supra.* We find that it was not independent, but rather part of the breach itself and merely demonstrated the bad faith nature of the breach. *Kewin, supra,* pp 422-423.

The breach asserted by defendants was plaintiffs' failure to pay the remaining amounts owed for defendants' electrical work, but in order to prove this claim defendants were required to show that they performed their contractual obligations and were not themselves in breach, which would have excused plaintiffs' nonpayment. Since defendants' work deviated from the written plans and specifications, defendants had to demonstrate that Budnick had orally agreed to modifications with

which defendants had complied. Hence, the representations made by Budnick which formed the basis of defendants' fraud claim were also an essential ingredient of defendants' breach of contract claim, and not independent thereof. That Budnick may have made these representations with no intention of ultimately following through on them merely reflects the bad faith nature of the later breach by refusing to pay because of defendants' noncompliance with the written plans and specifications.

Thus, the present case is similar to *Kewin, supra,* pp 422-423, where the plaintiff-insured claimed breach of an insurance contract and also alleged deceit and misrepresentation by the defendant-insurer in handling the claim, and the Court held that exemplary damages were not available because no tortious conduct independent of the breach existed. See also *Van Marter v American Fidelity Fire Ins Co,* 114 Mich App 171, 185; 318 NW2d 679 (1982). While defendants rely on *Oppenhuizen v Wennersten,* 2 Mich App 288; 139 NW2d 765 (1966), and *White v Production Credit Ass'n,* 76 Mich App 191; 256 NW2d 436 (1977), *lv den* 401 Mich 848 (1977), we note that those decisions predated *Kewin, supra,* and thus were decided without the benefit of the *Kewin* Court's clarification that, in cases involving commercial contracts, exemplary damages are recoverable only where the tortious conduct, such as fraud, is independent of the breach. Thus, we decline to treat those decisions as controlling the instant case. Because defendants did not submit proof of fraudulent conduct independent of the breach and therefore are not entitled to recover exemplary damages, the trial court's grant of a directed verdict for plaintiffs on defendants' fraud theory and refusal to

instruct on exemplary damages did not constitute reversible error.

## IX

The other issue raised by defendants in their cross-appeal is that the court erred when, at the close of the proofs, the court dismissed Budnick as a party. Defendants claim that Budnick should not have been dismisssed because the jury could have found him personally liable based on defendants' fraud theory. We have already determined above that defendants were not entitled to exemplary damages based on their fraud theory and, as to all other damages, defendants have expressed satisfaction with the jury's award of $180,000. Further, we have rejected plaintiffs' claims of error and affirm the judgment of $180,000 entered against Tempo and West. Budnick, as the general partner of West, is already subject to personal liability on defendants' judgment as against West. *Commonwealth Capital Investment Corp v McElmurry,* 102 Mich App 536, 541; 302 NW2d 222 (1980). Thus, any error in dismissing Budnick as a party was harmless and does not warrant disturbance of the judgment entered by the court.

Affirmed. No costs, neither plaintiffs nor defendants having fully prevailed.