CENTRAL TRANSPORT, INC v FRUEHAUF CORPORATION

Docket No. 66998. Submitted July 30, 1984, at Detroit.—Decided December 17, 1984.

Defendants Fruehauf Corporation and Fruehauf Finance Corporation leased a number of truck trailers to Michigan Express, Inc. Shortly thereafter, Michigan Express went into bankruptcy and became a wholly-owned subsidiary of plaintiff, Central Transport, Inc. Plaintiff promised full and complete performance by Michigan Express of its obligations under the lease agreements. At the expiration of the lease terms plaintiff tendered payment of $10 per trailer for transfer of· title, claiming that defendants had orally agreed to transfer ownership of the trailers to Michigan Express for that amount at the end of the lease terms. Defendants refused the tender, claiming that no such promise had been made. Defendants continued to bill plaintiff for the trailers on a monthly basis when plaintiff did not return them. Plaintiff brought an action to obtain title to the trailers and defendants filed a counterclaim for conversion. The Wayne Circuit Court, Arthur M. Bowman, J., granted a judgment of no cause of action against the plaintiff and awarded damages to defendants on their counterclaim. Plaintiff appealed, alleging that the trial court erred in excluding testimony relating to the alleged oral agreement to sell the trailers and in assessing the fair market value of the trailers. Defendants cross-appealed raising issues regarding damages. *Held:*

1. The trial court did not clearly err in finding the leases to be the full and unambiguous agreements between the parties. Where a contract is clear and unambiguous, parol evidence is not admissible to vary the terms thereof. Because the offered testimony did directly conflict with the language of the leases, it was inadmissible.

2. The trial court's determination of the value of the trailers

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts §§ 77, 241, 261.
[2] 17 Am Jur 2d, Contracts §§ 245-248, 260-262.
[3] 4 Am Jur 2d, Appeal and Error § 76.
[4] 18 Am Jur 2d, Conversion §§ 154, 166.
[5] 22 Am Jur 2d, Damages § 329.
[6, 7] 17 Am Jur 2d, Contracts § 292.

was within the range of the evidence and cannot be said to have been clearly in error.

3. The trial court did not err in finding that defendants did not carry their burden of proof of lost rental profits or of showing interest expenses on loans allegedly necessitated by the conversion.

4. The Wayne County Court Rules do not preclude an award of attorney fees incurred after the date of mediation.

5. Defendants are not entitled to per diem attorney fees for the 11 days of trial, pursuant to Wayne County Court Rule, because attorney fees are already paid as an item of damages.

6. The case is remanded for a determination of whether the attorney fee provision in the leases encompassed appellate attorney fees.

Affirmed, but remanded for further proceedings.

1. CONTRACTS — PAROL EVIDENCE — CONTRACT NEGOTIATIONS — PRIOR AGREEMENTS.

Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.

2. CONTRACTS — PAROL EVIDENCE — INTENTION OF PARTIES.

Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible where it bears on the threshold question of whether the parties to a contract intended the writing to be a complete expression of their agreement.

3. APPEAL — FINDINGS OF FACT — NONJURY TRIAL.

Findings of fact made by a trial court sitting without a jury will not be overturned on appeal unless the Court of Appeals, upon review of the record, is left with a definite and firm conviction that the trial court made a mistake (GCR 1963, 517.1).

4. DAMAGES — CONVERSION — BURDEN OF PROOF.

An injured party may recover incidental damages arising from a conversion; that party has the burden of proving damages with reasonable certainty.

5. DAMAGES — LOST PROFITS.

Calculation of lost profits may not be based solely on conjecture and speculation.

6. CONTRACTS — ATTORNEY FEES — DAMAGES.

Contractual provisions for payment of reasonable attorney fees

are judicially enforceable and are considered to be an item of damages, not costs.

7. CONTRACTS — ATTORNEY FEES — APPEAL.

A contractual provision for reasonable attorney fees incurred in enforcing the contract may validly include allowance for attorneys' services rendered upon appeal.

*Cross, Wrock, Miller & Vieson* (by *W. Robert Chandler*), for plaintiff.

*Berry, Moorman, King, Cook & Hudson* (by *Thomas M. Sullivan* and *Donald D. Cook*), for defendants.

Before: HOOD, P.J., and R. B. BURNS and S. EVERETT,* JJ.

R. B. BURNS, J. Plaintiff, Central Transport, Inc., brought this action to obtain title to 163 truck trailers which were the subject of a lease agreement with defendants Fruehauf Corporation and Fruehauf Finance Corporation (hereinafer defendant). Plaintiff claimed that defendant had orally promised to transfer title to the trailers at the end of the lease period for a title transfer fee of $10 per trailer. Defendant denied it made such a promise, and filed a counterclaim for conversion. After trial, the court found in defendant's favor and entered judgment on its counterclaim, with statutory interest. Plaintiff appeals from the judgment of no cause of action on its claim. Defendant cross-appeals, raising several issues concerning damages.

In September and October, 1970, Michigan Express, Inc (hereinafter MX), entered into three agreements to lease 165 trailers from defendant. The lease terms, other than the trailers involved and the rental amount, were identical. The leases provided that MX agreed "to pay all costs and

* Circuit judge, sitting on the Court of Appeals by assignment.

expenses (including actual and reasonable attorney fees where recovery of same is not prohibited by law) incurred by Lessor in enforcing its rights with respect to the equipment or [the] lease". Defendant could require MX to return the trailers on 30 days notice "after the expiration of the minimum term", which was 84 months. MX was obligated to return the equipment "in the same condition as it was when delivered" to MX, "ordinary wear and tear excepted". The contracts each contained an integration clause:

> "This instrument contains the entire agreement between the parties pertaining to the subject matter hereof. No agreements, representations, or understandings not specifically contained herein shall be binding upon any of the parties hereto unless reduced to writing and signed by the parties to be bound thereby. The terms, covenants, conditions and provisions of this Agreement may hereafter be changed, amended or modified only by an instrument in writing, specifically purporting so to do, and signed by the parties to be bound thereby."

The agreements were signed by the president of MX, Gerald Rykse. At trial, Rykse testified that when the leases were negotiated, he discussed ownership of the trailers with Richard Cross, defendant's Grand Rapids branch manager, and that Cross promised to send MX a letter which would evidence MX's option to buy the trailers for $10 each at the end of the lease. According to Rykse, the parties again discussed the letter when the first two leases were executed. The letter was never sent. Rykse reviewed the lease agreements with MX's attorney. The agreements were treated as leases on the company's books and for tax purposes.

By deposition, Cross testified that there was

some discussion regarding transfer of ownership upon termination of the leases, but that MX was to pay the "fair market value" of the trailers. Cross never drafted the letter embodying these terms because MX "went bankrupt and returned all the trailers".

MX went into bankruptcy in November, 1970. Plaintiff purchased a 15-month option to buy MX's stock, and was a key figure in the bankruptcy proceedings. Plaintiff's takeover of MX was subsequently approved by the bankruptcy court, and MX became plaintiff's wholly-owned subsidiary.

Defendant had filed a claim in bankruptcy court and opposed the plan of arrangement approved by the court. On March 15, 1971, plaintiff and defendant executed an agreement "to dispose of all matters in contention between them" with respect to defendant's claims against MX. Plaintiff promised "full and complete performance by MX" of the latter's obligations under the lease agreements. The overdue monthly installments were to "be prorated and spread over the balance of the [lease] term * * * together with interest at the rate of 7-3/4% per annum from its due date". On March 30, 1971, MX and defendant executed "lease amendments", which reflected the increase in the monthly installments derived from proration of the overdue payments. The amendments provided that original leases would otherwise "continue in full force and effect as originally written".

Ronald Lech, plaintiff's executive vice-president, testified that he participated in the negotiations culminating in the March 15, 1971, agreement with defendant's vice-president, Robert Jackson. According to Lech, it was agreed that MX would acquire the trailers for $10 each at the end of the lease period. Lech testified he indicated to Jackson his "understanding that this was [a] full payout

lease". Lech further testified that he agreed to a 7-3/4% interest rate "to apply [only] to all future payments", not just those overdue. The trial judge ruled Lech's testimony regarding the oral agreement inadmissible, concluding that a "full payout" term was inconsistent with the original leases and the March 15 agreement. On cross-examination, Lech admitted that after March, 1971, the transactions in question continued to be listed as lease payments in MX's records and for tax purposes. The March 15 written agreement was reviewed by plaintiff's attorney and Lech signed the agreement.

Larry Mason, Lech's administrative assistant, testified that he met with Hyatt Connor, defendant's manager of equipment leasing, in March of 1973. According to Mason, Connor assured him that the trailers would belong to plaintiff for $10 each if plaintiff continued making the payments on the leases. Mason, an experienced buyer of new and used trucking equipment, had inspected the trailers. In his opinion, the trailers were worth $1,500 each in 1977 if purchased as a combined fleet. Individually, their value ranged from $1,200 to $2,200.

On May 12, 1977, Mason wrote a letter to Richard Cross, expressing his view that plaintiff would obtain title to the trailers upon making the final lease payment later that year. Cross referred the letter to Robert Jackson. Jackson testified that this was the first time he became aware of plaintiff's position, that he had never heard of the letter referred to by Cross, and that he had never discussed transferring the trailers to MX for a nominal sum. Jackson agreed with Cross that plaintiff could acquire the trailers only by paying their fair market value, and so informed plaintiff on May 20, 1977. Cross offered to sell the trailers for $2,950 each. Jackson characterized that figure as the

"fair market value". Cross denied he told Lech that plaintiff could buy the trailers for $10 per unit.

In August, 1977, defendant refused to accept plaintiff's final payment which included a tender of $10 for transfer of title to each trailer. Defendant informed plaintiff that if it did not wish to continue the leases, then it had the 30 days notice to return the equipment. When plaintiff did not return the trailers, defendant continued to bill plaintiff on a monthly basis. These rental charges amounted to $875,984.90 through September, 1981.

Hyatt Connor testified that he could not recall telling Mason that plaintiff could acquire the trailers for $10 each and he "would never make a statement like that". Both Jackson and Connor testified that the interest rate on the original lease payments was 10-3/4%. The interest rate is not mentioned in the leases. However, Connor stated he had mistakenly applied the rate of 7-3/4% to all remaining payments when computing a "payoff" at Jackson's request. Connor characterized a "payoff" as "what we need in order to break even" on a lease agreement. It was defendant's practice to sell equipment at fair market value at the end of the lease term. Jackson agreed. In a pure lease agreement, the sum of the monthly payments would not include defendant's residual value or principal balance. In contrast, plaintiff contended that it "would end up with having paid the market price, more than paid it" after seven years (i.e., that this was a "full pay out lease"). Plaintiff's attorney vigorously cross-examined Jackson concerning the November 2, 1972, letter he sent to Lech, which set forth the "payoff" on two of the leased trailers which had been wrecked. The letter characterizes the sum of the installments as a "selling price", and makes no reference

to purchase at fair market value at the end of the lease. Jackson testified that the letter merely signified defendant's willingness to acccept the amount indicated, and "had nothing to do with a lease pay-off or lease balance due". Defendant had decided to give plaintiff "a break".

Connor further testified that if the trailers had been returned in 1977, defendant could have leased them again. 1977 "was a pretty good year" for the used trailer market. Connor testified he was aware of the value of used trailers. Though another employee of defendant had appraised the trailers at issue, Connor had his own opinion, which was that they were worth $2,500 to $3,000 each.

Defendant's accountant, Martin Welch, testified that if plaintiff had returned the trailers and defendant sold them for $2,950 each, defendant would have realized $457,500. Defendant could have used these funds to reduce its bank borrowing, thereby saving $175,400 in interest.

In his July 8, 1982, written opinion, the trial judge found that the three lease agreements were "pure leases". He stated:

"Central and Fruehauf, the parties to the subject lease agreements were well seasoned businesses, who were represented by able and competent counsel. The parties intended the written agreements to constitute the complete, full, integrated and unambiguous agreements.

"Since the subject lease agreements were not ambiguous so as to permit extrinsic parol evidence to interpret or explain them, there was no evidence to sustain a finding that the subject lease agreements were actually conditional sale agreements which provided Central with an option to purchase the trailers, upon termination of the lease agreements.

"The evidence did not support a finding that Central's

retention of the subject trailers, after the lease agreements expired, established a contract, implied in fact or in law, to renew the subject leases. There was no meeting of the minds of the parties hereto by reason of words or conduct to extend or renew the subject leases.

"However, Central's retention of the trailers, after the leases expired, without tendering to Fruehauf the demanded $2,950.00 per trailer, does constitute conversion. As a result of Central's conversion, Fruehauf is entitled to damages."

Plaintiff first contends that the trial court erred by excluding testimony of an alleged oral agreement to sell the trailers. Defendant argues that, since an option to purchase for a nominal sum is clearly inconsistent with the express terms of the written agreements, this evidence is prohibited by the parol evidence rule.

Where a contract is clear and unambiguous, parol evidence of negotiations cannot be admitted to vary the contract. *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974). The parol evidence rule also bars admission of prior or contemporaneous agreements that contradict or vary the written contract. *In re Bluestone Estate,* 121 Mich App 659, 665; 329 NW2d 446 (1982). Prerequisite to application of the parol evidence rule is a finding that the parties intended the writing to be a complete expression of their agreement. Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question. *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407, 410; 285 NW2d 770 (1979).

In this case, the trial judge found that "the parties intended the written agreements to constitute the complete, full, integrated and unambiguous agreements". Contrary to plaintiff's argument, the judge did not rely entirely on the writings for

this conclusion. Rather, he found that the testimony at trial indicated that the intent of the parties prior to entering into the lease agreements was consistent with the written agreements. He noted that the agreements were carried on MX's books as "pure leases"; that they were reported as leases for tax purposes; that defendant never sent MX the letter concerning the option to purchase; that plaintiff and defendant "were well seasoned businesses, who were represented by able and competent counsel"; and that the total of the rental payments was, in his view, less than the "cost of the trailers leased".

Testimony concerning the existence and terms of the alleged oral option to purchase directly conflicted. Essentially, the issue turned upon whom the court was to believe. Our review of the record does not leave us with a definite and firm conviction that the trial judge made a mistake. GCR 1963, 517.1; *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Plaintiff next argues that the trial judge erred in his assessment of the fair market value of the trailers. The trial court found that the average value of the trailers was $2,500. Plaintiff claims this finding is not supported by the evidence. We disagree.

Plaintiff's witness, Larry Mason, testified that the trailers were worth $1,500 each as a combined fleet. Hyatt Connor, defendant's equipment leasing manager, opined that they were worth $2,500 to $3,000 each. Plaintiff argues that Connor relied on the opinion of another Fruehauf employee for his estimate. This view of the matter lacks merit. Although his opinion may have mirrored that of the other employee, Connor conveyed his personal opinion. Plaintiff does not dispute Connor's qualifications to render an opinion on the value of the

trailers. We cannot say that the trial judge clearly erred. His finding was within the range of the evidence.

On cross-appeal, defendant contends that the trial court erred when it refused to award damages for lost rental profits and interest paid on bank loans necessitated by the conversion. An injured party may recover incidental damages arising from a conversion. *Oakland Nat'l Bank v Anderson,* 81 Mich App 432, 438; 265 NW2d 362 (1978); 22 Mich Law & Practice, Trover and Conversion, § 15, p 512. The party asserting the claim has the burden of proving damages with reasonable certainty. *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 801; 286 NW2d 34 (1979). Calculation of lost profits cannot be based solely on conjecture and speculation. *Tempo, Inc v Rapid Electric Sales & Service, Inc,* 132 Mich App 93, 103; 347 NW2d 728 (1984).

Here, the trial court correctly found that defendant did not carry its burden on this issue. Defendant submitted no proof of contracts which it was prevented from performing as a result of the conversion. Similarly, there was no proof of bank loans, or that defendant was forced to borrow at the prime rate because of the conversion. Moreover, damages for defendant's interest losses on the funds borrowed would overlap with damages for interest from the date of conversion. *Wronski v Sun Oil Co,* 89 Mich App 11, 28; 279 NW2d 564 (1979). Defendant failed to seek interest as an item of damages, but sought only statutory interest on the judgment, MCL 600.6013; MSA 27A.6013. Accordingly, we find no error in the trial court's denial of lost profits which defendant claimed as damages for conversion.

The trial court awarded defendant attorney fees

as an item of damages pursuant to the terms of the leases which state:

"Lessee agrees to pay all costs and expenses (including actual and reasonable attorney fees where recovery of same is not prohibited by law) incurred by Lessor in enforcing its rights with respect to the equipment or this lease."

Plaintiff claims it was error for the court to award defendant attorney fees incurred after January 13, 1981, the mediation date. In support of this proposition, plaintiff cites WCCR 403.15(e) which states:

"When the board's evaluaton [sic] is unanimous and both parties reject the board's evaluation and the amount of the verdict, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is within 10 percent above or below the board's evaluation, each party is responsible for his own costs from the mediation date. If the verdict is in an amount which, when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent above the board's evaluation, the defendant shall be taxed actual costs. If the verdict is in an amount which when interest on the amount and assessable costs from the date of filing of the complaint to the date of the mediation evaluation are added, is more than 10 percent below the board's evaluation, the plaintiff shall be taxed actual costs."

"Actual costs" are defined in WCCR 403.16:

"Actual costs include those costs and fees taxable in any civil action and, in addition, an attorney fee for each day of trial in circuit court, determined by the trial judge in accordance with the fee prevailing locally."

Here, both parties rejected the unanimous media-

tion evaluation in defendant's favor and the verdict was within 10 percent of the mediation evaluation. Thus, plaintiff argues, the court rule renders unenforceable the contractual agreement for the payment of attorney fees after the mediation date. We disagree.

Contractual provisions for payment of reasonable attorney fees are judicially enforceable. *Mich Nat'l Leasing Corp v Cardillo,* 103 Mich App 427, 436; 302 NW2d 888 (1981). Attorney fees awarded under contractual provisions are considered damages, not costs. *Wilson Leasing Co v Seaway Pharmacal Corp,* 53 Mich App 359, 367; 220 NW2d 83 (1974). Further, WCCR 403.16 defines "actual costs" to include only those "taxable in any civil action", in addition to a per diem attorney fee for trial work. The court rule, on its face, does not foreclose a damages award of attorney fees from the mediation date.

On cross-appeal, defendant argues that it is entitled to "actual costs", including a per diem attorney fee for the 11 days of trial. WCCR 403.15(e), 403.16. This claim lacks merit. Defendant is not entitled to attorney fees already paid as an item of damages.

Defendant also argues on cross-appeal that plaintiff's appeal of this matter has caused defendant to incur added attorney fees and costs in enforcing its rights. Thus, defendant contends, the judgment should contain language which permits the addition of these damages if defendant prevails in this appeal.

Although the trial judge found the contractual provision for attorney fees valid, he held that he lacked authority "to tell the Court of Appeals" that additional attorney fees incurred by defendant on appeal would be awarded. Attorney fees

awarded under the lease agreements are an item of damages arising from breach of those agreements. A contractual provision for reasonable attorney fees in enforcing provisions of the contract may validly include allowance for services rendered upon appeal. See Anno: *Contractual provision for attorneys' fees as including allowance for services rendered upon appellate review,* 52 ALR2d 863. See GCR 1963, 822.2(f).

Defendant asks this Court to amend the judgment to reflect an entitlement to appellate attorney fees. GCR 1963, 820.1(7). The trial judge, however, made no factual findings as to whether the provision in the lease agreements encompassed appellate attorney fees. Accordingly, we remand for a determination of whether the attorney fee provision in the leases extends to appellate fees. GCR 1963, 517.1. If the court so finds, it also should determine the reasonable value of the services of defendant's counsel on appeal. Statutory interest shall run only from such time as a reasonable appellate fee is fixed by the trial court.

Affirmed, but remanded for disposition consistent with this opinion.