**A & B STEEL SHEARING &
PROCESSING, INC.,
Plaintiff,**

**v.**

**The UNITED STATES of
America, Defendant.**

**Civil Action No. 95–40249.**

United States District Court,
E.D. Michigan,
Southern Division.

July 31, 1996.

John A. Lindquist, III, U.S. Dept. of Justice, Washington, DC, for U.S.

Julie D. Abear, Keywell & Rosenfeld, Troy, MI, for plaintiff.

1. Although the contract does not so indicate, it appears that Mr. Singh was acting on behalf of plaintiff corporation in purchasing the property.

2. It is disputed whether these funds were ever actually paid into the estate.

3. It is unclear to this court that the judgment against Kapila Construction Co. included an award of attorneys' fees. The judgment provided by plaintiff provides, in part:

IT IS ORDERED THAT:
a. Judgment be entered against Kapila Construction Company, Inc., its successors

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff brought the present action, seeking to enjoin a wrongful levy, pursuant to 26 U.S.C. § 7426(a)(1). Both sides have moved for summary judgment. For the following reasons, this court will grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

### I. Factual Background

In 1981, Ved Kapila purchased both the east and west halves of Lot 76, located in Oakland Hills Subdivision, for a total purchase price of $70,000.00. In 1983, Ved Kapila placed a building on the east half of the lot. In 1989, Ved Kapila died, leaving an estate which included Lot 76.

In January, 1990, Rajnish Kapila, the son of Ved Kapila, was appointed as Independent Personal Representative on behalf of his father's estate. On September 10, 1990, the estate was assessed over $97,000 in estate taxes.

On February 18, 1991, Rajnish Kapila, as representative of the estate, entered into a contract to sell Lot 76 to Amarjit Singh, sole shareholder of plaintiff corporation.[1] The contract provided for a purchase price of $152,000. In September, 1991, a closing for the sale occurred. Mr. Singh paid a total of $39,510.30 to Rajnish Kapila, Personal Representative of the Estate of Ved Kapila, by way of cashier's checks.[2] Further, plaintiff asserts that it forgave a judgment against Kapila Corporation Co. in the amount of $30,804.74, plus attorneys' fees of $6,000.[3]

and assigns, in the principal amount of $29,999 plus statutory interest, pursuant to MCLA 600.6013, from and after August 10, 1988 and costs in the amount of $709.
b. Counsel for Plaintiffs shall mail a copy of the Judgment to counsel for Defendant within one day after entry of this judgment.
The judgment, itself, does not provide for the award of attorneys' fees. For purposes of this motion, however, the court will assume that plaintiff was entitled to $6,000 in attorneys' fees from Kapila Construction Co.

Accordingly, plaintiff asserts that it paid consideration of $76,315.04 for Lot 76.[4]

Although the contract for the sale of Lot 76 provided for a payment of $152,000, plaintiff contends that Rajnish Kapila and plaintiff verbally agreed that the actual price to be paid for Lot 76 would be $76,315.04. According to plaintiff, the contract listed a price of $152,000 because, for whatever reason,[5] the parties wanted people to believe that $152,000, rather than $76,315.04 had been paid. In furtherance of this alleged ruse, Rajnish Kapila stated in documents provided to the state probate court that he had received $150,000 for the sale of Lot 76. Rajnish Kapila also indicated on the forms provided to the probate court that while he had received $150,000 for the sale of Lot 76, the lot was worth $359,600 at the time of the sale, incurring a net loss to the estate of $209,500.[6]

On October 21, 1991, a warranty deed conveying Lot 76 from Rajnish Kapila to plaintiff was recorded. The deed lists a purchase price of $152,000. On October 30, 1991, the IRS recorded a Notice of Federal Tax Lien against the estate for its unpaid assessed federal estate tax liability.

In 1992, Lot 76 was split, with the east half of the lot being auctioned by Michigan National Bank. As a result of this foreclosure, plaintiff recovered $35,000 from a title insurance company.

## II. Standard of Review

 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to make credibility determinations or weigh the evidence. *Harris v. City of Akron,* 20 F.3d 1396, 1403 (6th Cir.1994).

 The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving par-

---

4. It is questionable whether the forgiveness by plaintiff of a debt owed by Kapila Construction Co. may qualify as consideration paid to the estate of Ved Kapila. There is no evidence that plaintiff could have pierced the corporate veil and recovered its judgment against Ved Kapila personally. In other words, although plaintiff had a right of recovery against Kapila Construction Co., it very well may not have had a right of recovery against the estate of Ved Kapila. For purposes of this motion, however, the court will assume that plaintiff could have properly made a claim against the estate of Ved Kapila for the amount of its judgment against Kapila Construction Co. and that the forgiveness of that debt may serve as consideration paid to the estate for the purchase of Lot 76.

5. Plaintiff asserts that Mr. Singh suggested that the price of the sale be misrepresented so that plaintiff's corporate books would look healthier, making it easier to obtain a loan. Plaintiff does not seem concerned that it is admitting that it was hoping to fraudulently obtain a loan for its company, presumably from a federally insured institution.

6. This court is concerned by plaintiff's allegations that purposeful misrepresentations were made to the Oakland County Probate Court regarding the sale of Lot 76. Further, this court is surprised by the cavalier manner in which plaintiff not only admits to taking part in these misrepresentations, but also relies upon them as an integral part of its case.

ty to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

#### A. 26 U.S.C. § 6321

26 U.S.C. § 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." This lien is limited however, and "shall not be valid as against any purchaser ... until notice thereof which meets the requirements of subsection (f) has been filed by the secretary." 26 U.S.C. § 6323(a). A "purchaser" is defined as follows:

> The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for purposes of subsection (a) of

this section, and for purposes of section 6324—

> . . . . .
>
> (B) a written executory contract to purchase or lease property ...

which is not a lien or security interest shall by treated as an interest in property.

26 U.S.C. § 6323(h)(6).

The parties agree that, due to the timing of the recordation of the deed to Lot 76 and the IRS lien, that plaintiff is not subject to the lien if it can demonstrate "purchaser" status. The Government contends that plaintiff, as a matter of law, is not a purchaser because it did not pay "adequate and full consideration" for Lot 76. Plaintiff asserts that the fair value of Lot 76 is the price that Singh and Rajnish negotiated for the sale and that, therefore, it did pay "adequate and full consideration."

■ The question of whether plaintiff is a purchaser who paid adequate and full consideration under § 6323 is a question of federal law. *United States v. McCombs*, 30 F.3d 310, 330 (2nd Cir.1994). The burden of proof is placed on the party seeking to attain purchaser status. *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 344 (3d Cir.1992); *United States v. McCombs*, 928 F.Supp. 261, 267 (W.D.N.Y.1995). 26 C.F.R. § 301.6323(h)–1(f)(3) defines "adequate and full consideration in money or money's worth" as follows:

> [A] consideration in money or money's worth having a reasonable relationship to the true value of the property acquired.... Adequate and full consideration in money or money's worth may include the consideration in a bona fide bargain purchase.

This requirement of adequate and full consideration must be strictly applied. *United States v. Paladin*, 539 F.Supp. 100, 103 (W.D.N.Y.1982); *Continental Oil Co. v. United States*, 326 F.Supp. 266, 270–71 (S.D.N.Y. 1971).

■ In the present case, plaintiff alleges to have paid $76,000 of consideration to purchase the land. This court agrees that one acceptable measure of the value of Lot 76 in 1991 is a price agreed upon between parties

engaged in a bona-fide, arms-length negotiation. Using this standard, however, plaintiff loses.

The contract for the sale of the land between plaintiff and Rajnish Kapila provides for a sales price of $152,000.[7] Plaintiff cannot now argue that there was an oral agreement between the parties that was directly contradictory to the plain language of the contract in an attempt to vary the contract. That is classic parol evidence. "Where a contract is clear and unambiguous, parol evidence cannot be admitted to vary it. *Central Transport, Inc. v. Fruehauf Corp.*, 139 Mich. App. 536, 544, 362 N.W.2d 823 (1984). Prerequisite to application of the parol evidence rule is a finding that the parties intended the writing to be a complete expression of their agreement. *Id.*" *In re Skotzke Estate*, 216 Mich.App. 247, 251, 548 N.W.2d 695 (1996). Extrinsic evidence may be viewed to determine whether a contract is meant to be the final expression of the parties on a particular issue. *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir.1984).

In the present case, the contract could not be more clear that the purchase price was $152,000. There is absolutely no indication that this unambiguous price term was open to further negotiation between the parties. Plaintiff's only claim is that the contract was a mutually agreed upon lie. This does not create an ambiguity in the contract. Therefore, this court holds that the writing was meant to be the complete expression of their agreement with respect to price and that plaintiff may not use parol evidence to elude the clear provisions of the contract. Otherwise, plaintiff would be able to undermine the clear language of the contract by unilaterally making the self-serving statement that the parties really did not mean to sell the property for $152,000 when they wrote $152,000.

The only permissible evidence of the sales price of the land agreed upon between Mr. Singh and Rajnish Kapila is the contract, which lists a price of $152,000.

Given that plaintiff alleges to have paid only about $76,000 for Lot 76, and the sales contract for Lot 76 required consideration of $152,000, it is clear that plaintiff has not paid "full and adequate consideration" for the land. Plaintiff has, at most, paid half consideration for Lot 76. Accordingly, plaintiff may not attain "purchaser" status and is not exempt from the Government's lien.

■ The court notes further that, aside from plaintiff's impermissible parol evidence, there is not a shred of evidence in the record suggesting that the value of Lot 76 in 1991 was close to $76,000. To the contrary, although the record is not perfect,[8] this court believes that one could only conclude that Lot 76 was worth substantially more than the $76,000 plaintiff allegedly paid for it. In 1981, Lot 76 was purchased for $70,000. Then, an office building was constructed on the east half of Lot 76, which certainly would have greatly increased the value of Lot 76. In 1991, Lot 76, apparently in combination with the north 32 feet of an adjacent lot, was assessed by the city at about $290,000. In documents submitted to the Probate Court, Rajnish Kapila estimated the value of Lot 76 to be $359,600. Albeit after renovations, in 1995 the east half of Lot 76 alone was valued at $500,000. These figures demonstrate that Lot 76 was worth substantially more than $76,000 in 1991 and that plaintiff could not, therefore, be a "purchaser." *See United States v. Mac Cement Finishing Corp.*, 546 F.Supp. 52, 53–54 (N.D.N.Y.1982); *United States v. McCombs*, 928 F.Supp. 261, 267 (W.D.N.Y.1995) and cases cited therein.

7. Further, the deed for the land lists a purchase price of $152,000. Plaintiff listed the value of the property on its balance sheets at $152,000. Additionally, Rajnish Kapila listed the purchase price at $150,000 in documents submitted to the probate court. Ironically, in those same documents, Rajnish Kapila lists the value of Lot 76 at over $350,000, not $76,000.

8. Although there are various estimates given for the value of Lot 76 at various time periods, the parties were not able to submit an expert valuation of Lot 76 at the time that it was sold to plaintiff. This court does not understand why the Government did not submit the affidavit of a realtor concerning the value of Lot 76 during the relevant time period. Such an affidavit, this court believes, would most likely have conclusively shown that Lot 76 was worth substantially more than $76,000 at the time that it was sold.

## B. 26 U.S.C. § 6324

In addition to the general lien under § 6321, the Government has a lien under 26 U.S.C. § 6324(a)(1). § 6324(a)(1) provides:

Unless the estate tax imposed by Chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.

 This lien has no recording requirement, and may therefore be enforced against innocent subsequent transferees. *See United States v. Vohland,* 675 F.2d 1071, 1074 (9th Cir.1974). This lien, by the terms of. § 6324, does not apply to portions of the gross estate that (1) were used to pay charges and expenses of the estate (2) after a court allowed such use. "The express language of § 6324(a)(1) manifests the intent of Congress to interpose an independent and neutral judicial evaluation of claims as a prerequisite to any divestiture of the special estate tax lien in order to protect the right and ability of the Service to collect the estate tax." *Kleine v. United States,* 539 F.2d 427, 431 (5th Cir.1976). This means that there must be judicial approval before the § 6324 lien will be divested. *Id.* at 431–32.

In the present case, plaintiff has failed to meet either of the two requirements of § 6324. First, there is no evidence that the money purportedly given to the estate was used for the payment of estate expenses. Plaintiff has produced a check for $30,331.93 made out to "Rajnish Kapila, Personal Representative of the Estate of Ved P Kapila" and a check for $9,178.37 made out to "City of Farmington Hills and Rajnish Kapila Personal Representative of the Estate of Ved P Kapila." Thus, while there is evidence that plaintiff paid this money, there is no evidence that the money was used to pay the expenses of the estate. To the contrary, defendant has produced an affidavit from the current representative for the estate of Mr. Kapila providing that there is no evidence that the estate received any money from the sale of Lot 76 to plaintiff. Accordingly, plaintiff has failed to properly trace the money it purportedly paid back to the estate.

Second, plaintiff has not demonstrated that there was the requisite court approval for the sale of Lot 76. Plaintiff has produced a court order that merely provides that Mr. Rajnish Kapila was authorized to sell real property of the estate without seeking court approval. This is not the same as actually receiving court approval, within the meaning of § 6324, however. *Id.* at 432. Mr. Rajnish Kapila did not obtain prior court approval of the sale. Consequently, the § 6324 tax lien is not divested.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment be **DENIED.** It is hereby further **ORDERED** that defendant's motion for summary judgment be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE.** It is hereby further **ORDERED** that the Government is not enjoined from administratively levying, seizing, or selling the subject property in this action.

**SO ORDERED.**