# STATE OF MICHIGAN

# COURT OF APPEALS

JAY CHEVROLET, INC.,

        Plaintiff-Appellee,

v

LJUVIC STJEFAN DEDVUKAJ,

        Defendant-Appellant.

FOR PUBLICATION
June 2, 2015
9:20 a.m.

No. 319187
Oakland Circuit Court
LC No. 2013-009903-AV

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and SHAPIRO, JJ.

SHAPIRO, J.

Defendant Ljuvic Stjefan Dedvukaj appeals by leave granted[1] the opinion and order of the circuit court, which affirmed the district court's order granting judgment in favor of plaintiff Jay Chevrolet, Inc., for $10,000, and reversed the district court's order denying plaintiff's request for attorney fees. We affirm in part and reverse in part.

Defendant purchased a car from plaintiff in 2012. The total price for the car was $32,581.96, as set forth in the Retail Installment Sales Contract (RISC). The RISC contained an "itemization of amount financed" showing a down payment of $10,000, a rebate of $6,500, and an "amount financed" of $16,081.96.

Plaintiff, claiming that defendant never paid the $10,000 down payment, filed suit in district court. It alleged that at the time of vehicle delivery, its staff member forgot to obtain the down payment of $10,000 and later, when the amount was requested, defendant refused to pay it. At trial, defendant testified to the contrary, stating that he paid the down payment in cash at which time the parties executed the RISC. Defendant did not proffer a receipt for the down payment, arguing that the RISC was a written acknowledgement that the down payment had been made and that because the RISC contained a merger provision, plaintiff should not be permitted to rely on parole evidence to rebut that writing.

---

[1] *Jay Chevrolet, Inc v Dedvukaj*, unpublished order of the Court of Appeals, entered May 30, 2014 (Docket No. 319187).

The district court concluded that parole evidence as to an agreement to make the down payment and whether it was in fact paid could be considered because

> the Plaintiff's acknowledgement of the consideration in the RISC (i.e. receipt of the down-payment and the balance due) was [not] anything more than a statement of fact, as opposed to being an expressed term of the contract. . . . Plaintiff's acknowledgement of the consideration was a mere recital, rather than a term of the agreement.

The district court then determined that defendant had failed to pay the $10,000 down payment and entered judgment in favor of plaintiff in that amount. Later, in a separate order, the district court denied plaintiff's request for attorney fees.

Both parties appealed to the circuit court which affirmed the judgment for the down payment in plaintiff's favor, but reversed the district court's denial of plaintiff's request for attorney fees. We granted defendant's application for leave to appeal. "This Court [] reviews de novo issues of contractual interpretation." *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011). The goal of contract interpretation is to give effect to the intent of the parties. *Id*. Where a contract's language is unambiguous, this Court must read and apply the contract as written. *AFSCME Int'l v Bank One*, 267 Mich App 281, 283; 705 NW2d 355 (2005). "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Trader*, 293 Mich App at 216 (quotation marks and citation omitted).

Defendant first argues that the district court should have dismissed the case as plaintiff lacked standing to sue under the RISC because, contemporaneous with its execution, all of plaintiff's rights under the contract were assigned to a third-party finance company. The circuit court rejected this argument, finding that the right to payment of the down payment had not been assigned when the RISC was assigned. It noted that

> [t]he Michigan Motor Vehicle Finance Act defines 'down payment' as 'all partial payments, whether made in cash or otherwise, received by or for the benefit of the seller before or substantially contemporaneous with either the execution of the installment sale contract or delivery of the goods sold under that contract, whichever occurs later. MCL 492.102(11).[2]

We affirm the circuit court's conclusion that plaintiff possessed standing to seek payment of the down payment. While the RISC was assigned to the third-party entity, the language of the contract indicates that the RISC related only to the payment of the amount financed, not the down payment. The RISC contains a clause which states, "You, [defendant], may buy the

---

[2] MCL 492.102 was rewritten in 2013 PA 16. The definition of "down payment" quoted by the trial court, formerly MCL 492.102(11), is substantially the same in the rewritten version ("goods" was replaced with "motor vehicle") and now codified as MCL 492.102(d).

vehicle described below for cash or on credit." Further, "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay us . . . the Amount Financed and Finance Charge according to the payment schedule shown below." The down payment is mentioned only once in the RISC, in the section entitled "Itemization of Amount Financed," and mentioned there only to subtract the amount of the down payment from the price of the vehicle to determine the amount financed. There is no clause in the RISC requiring payment of the down payment in any manner. That promise was made, and was binding on defendant, but not on the basis of the RISC. In sum, a contract separate from the RISC existed between plaintiff and defendant concerning the payment of the down payment. The contractual language of the RISC indicates that it did not govern payment of the down payment and, therefore, the assignment of the RISC had no effect on plaintiff's standing to sue regarding the down payment. Defendant's argument fails and, given the district court's findings that plaintiff and defendant entered into an oral contract for payment of the down payment and that defendant breached that contract, we affirm that portion of the circuit court judgment.

Defendant next argues that the circuit court erred by reversing the district court's denial of plaintiff's request for attorney fees. Plaintiff's argument to the circuit court rested on a clause of the RISC that provides a right to attorney fees under certain circumstances:

> **b. You may have to pay all you owe at once**. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
>
> 1. You do not pay any payment on time;
>
> 2. You start a proceeding in bankruptcy or one is started against you or your property; or
>
> 3. You break any agreements in this contract.
>
> The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
>
> c. **You may have to pay collection costs**. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs, as the law allows.

Defendant countered that in using the phrase "as the law allows," the provision deferred to Michigan law governing attorney fees and, since Michigan law does not provide for attorney fees in an ordinary contract case, plaintiff was not entitled to fees.[3] The district court denied

---

[3] "A court may award costs and attorney fees only if specifically authorized by a statute, a court rule, or a recognized exception to the American rule (which mandates that a litigant be responsible for his or her own attorney fees)." *Hackel v Macomb Co Comm*, 298 Mich App 311, 334; 826 NW2d 753 (2012). "Exceptions to the general rule are narrowly construed." *Fleet*

plaintiff's request, stating that (1) "[i]f anything, it was the Plaintiff's error, which caused the Plaintiff [to] have to incur the fees because they forgot to take the down payment of the car prior to releasing it[,]" and (2) because any awardable fees "are damages by contract the Court had no opportunity to hear what in fact they were[.]" The circuit court reversed in light of the fact that parties may agree to contract for attorney fees and that doing so is something "the law allows."

We agree with the circuit court that an exception to the general American rule exists "where [attorney fees are] provided by contract of the parties[,]" *Grace v Grace*, 253 Mich App 357, 370-371; 655 NW2d 595 (2002), and the RISC does contain a clause providing for the award of attorney fees in certain circumstances. However, we reverse based on our earlier conclusion that the RISC did not govern the down payment. The promise to pay the down payment was a contract separate from the RISC and there is no indication that this contract contained an attorney fee provision. As such, the only exception to the general rule that attorney fees are not permitted given by plaintiff and the circuit court—that the RISC provided for attorney fees for *its* breach—is irrelevant. The general rule barring attorney fees applies.[4] See *Hackel*, 298 Mich App at 334.

Accordingly, we affirm the circuit court's order affirming the district court's judgment in favor of plaintiff for $10,000 and reverse the circuit court's order reversing the district court's denial of attorney fees.

Affirmed in part and reversed in part. No costs to either party, neither having prevailed in full. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Kirsten Frank Kelly
/s/ Amy Ronayne Krause

---

*Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007).

[4] No suit was brought by the third-party financing entity because defendant made his installment payments as agreed upon in the RISC.