# STATE OF MICHIGAN

# COURT OF APPEALS

RESOURCE POINT LLC,

Plaintiff-Appellant/Cross-Appellee,

v

ADDOLUX LLC,

Defendant,

and

MASOUD ABBASI,

Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
September 20, 2018

No. 338338
Oakland Circuit Court
LC No. 2015-150580-CB

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

Following a successful trial on Resource Point LLC's breach-of-contract claims against Masoud Abbasi, the trial court awarded Resource Point $22,600 in damages plus statutory attorney fees and costs. The parties cross appeal the damages award and Resource Point further contends that it was entitled to attorney fees as an element of damages under the contract. The trial court clearly erred in calculating damages and in failing to award attorney fees as provided in the parties' contract. Accordingly, we vacate those portions of the lower court judgment and remand for further proceedings.

## I. BACKGROUND

Resource Point is a staffing company specializing in the placement of information technology (IT) professionals. In June 2012, Resource Point contracted to provide IT professionals to Gordon Food Service (GFS). Abbasi is an IT professional who provided software development services with a business partner through Addolux LLC. Resource Point contracted with Addolux on October 22, 2012 for Addolux to provide IT services to GFS through Abbasi. The Addolux-Resource Point contract included a "Confidentiality and Noncompetition Agreement," under which Addolux and Abbasi agreed not to solicit work from Resource Point's clients during the term of employment and for 18 months thereafter. Abbasi

-1-

worked at GFS from October 2012 through February 8, 2014 (the "first GFS engagement"). His noncompete agreement expired on August 8, 2015.

After the GFS employment ended, Abbasi and his business partner dissolved Addolux and Abbasi started a new company with his wife. Abbasi requested Resource Point to keep him in mind for future jobs, but he also independently sought out employment opportunities. In June 2015, Resource Point contacted GFS in an attempt to arrange additional work for Abbasi. At that time, Resource Point learned that Abbasi had "circumvented" the middle man and had directly solicited and obtained employment at GFS (the "second GFS engagement"). Resource Point responded by filing suit.

Following a bench trial, the circuit court concluded that Abbasi had breached the noncompete agreement. The more difficult issue to resolve was damages. During the first GFS engagement, GFS paid Resource Point $160 per hour of services; Resource Point in turn paid Abbasi $115 an hour, leaving Resource Point with a profit of $45 per hour. After six months, GFS increased the pay rate to $180 per hour. Resource Point paid Abbasi $130 an hour, for a profit of $50 per hour. Under both pay rates, Resource Point retained 28% of the GFS payment. During the second GFS engagement, Abbasi worked for a different GFS department. Under this contract, GFS paid Abbasi $150 per hour. And from June 2015 through the time of trial, Abbasi had worked a total of 2,896 hours.[1]

Resource Point and the trial court disagreed regarding how to calculate Resource Point's damages for Abbasi's work during the second GFS engagement. Resource Point provided evidence that it bore some overhead from negotiating the first contract between GFS and Abbasi, but asserted that with the initial work under its belt, these costs would not be duplicated in a second placement between GFS and Abbasi. Accordingly, Resource Point asserted, its share of the payments during Abbasi's second GFS engagement would have been "pure profit." Overall, Resource Point sought $180,800 in damages.

The court had other ideas. Resource Point provided evidence that it grossed over $6 million the previous year, with a net profit of $750,000. The court took judicial notice that Resource Point's overall profit margin was 12.5% and determined to award Resource Point only 12.5% of the payments Resource Point would have retained during Abbasi's second GFS engagement, a total of $22,600.

Resource Point also sought attorney fees and costs of almost $100,000 as part of its damages award pursuant to the following provision in its contract with Addolux and Abbasi:

> Contractor Employee agrees to indemnify and hold harmless Company for any and all loss, costs and other liability incurred or threatened, including

---

[1] Resource Point presented undisputed evidence that GFS would not have hired Abbasi for the second engagement if it had to wait until the August 2015 expiration of the noncompete agreement. Accordingly, the trial court determined that the entirety of Abbasi's second GFS engagement was undertaken in breach of contract.

attorney's fees, related to violations of the obligations set forth in this Agreement of Contractor's Employee.

The court denied Resource Point's request for attorney fees under this provision with no real explanation. Instead, the court ruled that Resource Point would be limited to attorney fees and costs permitted under statute and court rule.

## II. DAMAGES

Both Resource Point and Abbasi challenge the amount of damages awarded by the trial court. Resource Point continues to contend that its earnings on the second GFS engagement would have been pure profit, entitling it to a much larger award. On cross-appeal, Abbasi argues that the trial court properly used a net-profit analysis, but asserts that the gross revenue should have been calculated at $20 per hour because of overhead costs.

Following a bench trial, we review for clear error the trial court's factual findings, such as the calculation of damages, and review de novo the court's legal conclusions. *City of Flint v Chrisdom Props, Ltd*, 283 Mich App 494, 498; 770 NW2d 888 (2009); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

"The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). The proper measure of damages for a breach of contract is "the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached." *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94 (2006). Stated differently, the aggrieved party is entitled to damages "which would place [it] in as good a position as it would have been in had the promised performance been rendered." *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 98; 443 NW2d 451 (1989).

In some contract cases, the value of the contract includes the profits the injured party would have received. See *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 95-96; 706 NW2d 843 (2005); *Goodwin, Inc v Coe*, 62 Mich App 405, 412; 233 NW2d 598 (1975). Lost profits may be recoverable if they were a damage " 'in the contemplation of the parties at the time the contract was made.' " *Lawrence v Will Darrah & Assocs*, 445 Mich 1, 6; 516 NW2d 43 (1994), quoting *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980). "Under Michigan law, damages for lost profits must reflect net profits, not gross profits. *Net profits* means lost revenue minus costs that were avoided or would have been incurred in obtaining the revenue." Patek et al, Damages and Remedies in Michigan (4th ed), § 8.5, p 238 (citations omitted).

As noted, the parties' noncompete agreement provided that Abbasi was required "to indemnify and hold harmless" Resource Point "for any and all loss, costs, and other liability incurred or threatened" as a result of Abbasi's breach. To calculate Resource Point's loss, the

circuit court was required to determine the value of Abbasi's contract for the second GFS engagement. Resource Point presented evidence that at the time of trial, Abbasi had worked 2,896 hours for GFS, for an average of 38.61 hours per week. Other uncontroverted evidence established that Abbasi's work would continue for at least another four months, or 16 weeks, under the second GFS engagement. Multiplying 38.61 hours per week by 16 weeks amounts to an additional 617.76 hours. Rounding that number and adding it to the hours Abbasi had already worked amounts to a total of 3,514 hours. The second GFS engagement was therefore worth 3,514 hours of work.

The value of the hours then becomes critical to determining Resource Point's lost profits. Resource Point presented evidence that GFS paid $150 per hour under the second GFS engagement.[2] Multiplying the total number of hours worked (3,514) by this hourly rate amounts to a total of $527,100—i.e., the total value of the second GFS engagement was $527,100.

Resource Point would not have been entitled to the entire $527,100, as it would have been required to turn a portion of this amount over to Abbasi as his compensation. Accordingly, the trial court was next required to calculate how much of the total contract value would have flowed into Resource Point's pockets. To arrive at this figure, it is appropriate to consider past dealings between the parties involved. As noted, the undisputed evidence shows that Resource Point retained 28% of GFS's payment during Abbasi's first GFS engagement. The evidence of these previous dealings allowed Resource Point to prove its damages with reasonable certainty. *Health Call of Detroit*, 268 Mich App at 96. The proper measure of damages was 28% of the value of the contract for the second GFS engagement; 28% of $527,100 amounts to a total of $147,588 in lost profits.

The trial court clearly erred in calculating Resource Point's damages after the bench trial. The court calculated damages based on Resource Point's overall net profit from the last fiscal year, a figure in no way related to this particular contract. Further, instead of measuring the profit percentage against the entirety of the contract, the court awarded only 12.5% of Resource Point's projected hourly profit under the second GFS engagement contract. The court claimed this was required to avoid awarding Resource Point the amount it would have borne as overhead. However, Resource Point presented evidence that it would have had no additional overhead for placing Abbasi back in the GFS account. Abbasi presented no evidence to the contrary. Accordingly, the trial court erred in this regard as well.

We vacate the damages portion of the trial court judgment and remand for entry of a judgment awarding Resource Point $147,588 in damages for lost profits.

---

[2] Resource Point contended that it would have negotiated the hourly rate of this contract at $180 and should be recompensed at that rate. It is not certain that GFS would have agreed to the higher rate. Accordingly, the trial court properly rejected that claim.

## III. ATTORNEY FEES

The trial court also erred, however, in denying Resource Point's request for attorney fees as contemplated by the noncompete agreement as part of the damages award. We review de novo legal questions regarding the applicability of contractual attorney-fee provisions. *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 588; 735 NW2d 644 (2007). Although parties are generally required to bear their own litigation costs, they may also contract for the "payment of reasonable attorney fees" in the event of a contractual dispute. *Id*. at 589 (quotation marks and citation omitted). "Attorney fees awarded under contractual provisions are considered damages, not costs." *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 548; 362 NW2d 823 (1984).

The plain and unambiguous language of the noncompete agreement provides that Resource Point's attorney fees are part of the damages award in this case. See *Jay Chevrolet, Inc v Dedvukaj*, 310 Mich App 733, 735; 874 NW2d 146 (2015). Again, the contract provided that Abbasi agreed to indemnify and hold harmless Resource Point for certain losses, costs, and liabilities, including attorney fees. This language was clear and capable of no other interpretation. Accordingly, the trial court fundamentally erred in awarding Resource Point only those costs and fees allowed under statute and court rule.

Before being awarded attorney fees under a contract, the prevailing party must prove the number of hours spent and reasonableness of the attorney fees. *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008) (TAYLOR, C.J.). Here, Resource Point was not allowed an opportunity to meet its burden because the trial court improperly rejected its request to present evidence in this regard. Accordingly, we must also vacate the attorney-fee portion of the lower court judgment and remand for further proceedings in this regard.

We vacate those portions of the judgment awarding damages and attorney fees and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Resource Point, as the prevailing party, may tax costs pursuant to MCR 7.219(A).

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher