# STATE OF MICHIGAN

# COURT OF APPEALS

---

LANSING PARKVIEW, LLC,

        Plaintiff/Counterdefendant/Third-
Party Defendant-Appellee,

v

K2M GROUP, LLC and DON L. KESKEY,

        Defendants/Counterplaintiffs/Third-
Party Plaintiffs-Appellants,

and

ROBERT REID and JOEL I. FERGUSON,

        Third-Party Defendants-Appellees.

UNPUBLISHED
October 23, 2018

No. 338284
Ingham Circuit Court
LC No. 13-000723-CK

---

LANSING PARKVIEW, LLC,

        Plaintiff/ Counterdefendant/Third-
Party Defendant-Appellee,

v

K2M GROUP, LLC and DON L. KESKEY,

        Defendants/Counterplaintiffs/Third-
Party Plaintiffs-Appellants,

and

No. 339030
Ingham Circuit Court
LC No. 13-000723-CK

-1-

ROBERT REID and JOEL I. FERGUSON,

        Third Party Defendants-Appellees,

and

BRIAN W. COYER,

        Appellant.

---

Before:  STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendants, K2M Group, LLC and Don L. Keskey, appeal as of right the order of the trial court awarding attorney fees and costs to plaintiff Lansing Parkview, LLC in the amount of $262,772.33.  Defendants, together with appellant Brian W. Coyer, also challenge the trial court's order imposing sanctions on Coyer.  We affirm.

## I.  FACTS

At the times relevant to this case, plaintiff Lansing Parkview, LLC owned property at 505 N. Capitol Avenue in Lansing.  The sole member of Lansing Parkview, LLC is third-party defendant Joel I. Ferguson.  Defendant Keskey is an attorney and is the sole member of defendant K2M Group, LLC.  Appellant Brian W. Coyer is an attorney representing defendants as co-counsel with defendant Keskey.

This case arises from defendants' breach of a lease agreement relating to the property at 505 N. Capitol Avenue.  The resulting breach of contract case was previously before this Court. The facts underlying that previous case, and also underlying this appeal, were set forth by this Court in its opinion in that case as follows:

> On June 21, 2006, plaintiff and defendants entered into an 18-month lease for the entire 20,000 square foot building and 30 parking spaces on the property at a monthly lease rate of $8,600.  The lease provided that defendants would pay for all of the operating expenses during the lease term including the property taxes, insurance, maintenance, and utilities.  Simultaneous with entering into the lease, the parties entered into an option to purchase the property for $1,250,000 at any time during the lease period.  The option provided for a payment by defendants of $250,000 as "Option Money" upon execution of the option "as a non-refundable option payment" that would be applied as a credit against the sales price if defendants exercised the option and purchased the property.

Defendants exercised several extensions of both the lease and the option to purchase and, on June 30, 2008, the parties executed an addendum to the lease and to the option to purchase that extended the terms of both until June 30, 2009. On June 10, 2009, the parties executed a "Third Addendum to Lease" that extended the terms of the lease to December 31, 2010, and also executed an "Addendum to Option to Purchase" that extended the time for exercise of the option until December 31, 2010. At that time, however, defendants were in default under the terms of the lease for failing to make lease payments in accordance with the term[s] of the lease and for non-payment of property taxes. Defendants agreed to pay the amount of deferred rent and to reimburse plaintiff for unpaid property taxes on or before July 15, 2009.

On March 29, 2010, plaintiff sent defendants a letter indicating that $107,988.68 was then due and that plaintiff would consider entering into an agreement for leasing a portion of the building and five parking spaces for $4,000 per month with plaintiff having responsibility for paying all utilities, building insurance, and general maintenance. The proposal also included a requirement that defendants enter into a promissory note payable to plaintiff and a guarantee for all delinquent amounts due under the lease.

On August 6, 2010, the parties entered into a new lease and a new option to purchase, effective May 1, 2010 and terminating October 31, 2011. The new lease provided that plaintiff could cancel the lease if plaintiff sold the property or leased the property to another party. The new lease included a provision for holding over on a month to month basis for 115% of the rent charged during the period of the new lease. The new option included an amortization schedule that allowed for a credit of $250,000 at the time of closing for the initial option payment and allowed rent credits according to a formula from the time of the first lease on June 21, 2006, through the date of exercise of the option. Thus, the purchase price of $1,250,000 provided in the option would be reduced to $863,265.13 on May 1, 2010, if the option was exercised. The new option provided that the option could not be extended except by written agreement of both plaintiff and defendants, and provided that "[t]his represents the entire agreement between the Lessor and Lessee except for a Lease Agreement and Promissory Note given by Lessee to Lessor of even date, and supersedes or replaces all prior agreements, or understandings, either written or oral."

The new lease expired on October 31, 2011. Plaintiff offered to extend the lease from November 1, 2011, until April 30, 2013, and proposed an extension of the promissory note until April 1, 2013. Plaintiff did not offer to extend the option to purchase. Defendants did not agree to execute an extension of the lease or the amended promissory note and, consequently, became a month-to-month tenant as of November 1, 2011. On August 28, 2012, plaintiff served a notice to quit to recover possession of the property because defendants were delinquent in the payment of rent under the new lease and were in default in making payments due under the promissory note. Defendants surrendered possession of the property on September 26, 2012.

On January 23, 2013, plaintiff sent written notice of default under the May 1, 2010 promissory note and guarantee and provided a 15-day period to cure the default by paying the total amount due of $152,159.56. On May 29, 2013, plaintiff provided written notice of default under the May 1, 2010 lease, the May 1, 2010 promissory note, and the May 1, 2010 guarantee, and provided a 15-day period to cure the default by the payment of $159,951.69.

On July 1, 2013, plaintiff filed a complaint against defendants for breach of contract. Plaintiff sought a judgment of $130,990.26 as the unpaid principal under the promissory note and $12,000 as the unpaid rent under the lease plus interest, late payment fees, costs, and attorney fees incurred as a result of the default. Defendants filed a counter-complaint/third party complaint. . . .

* * *

Defendants asserted that plaintiff had orally represented from the inception of the 2006 lease and option to purchase that "the overall transaction involved a purchase of the Property but would be structured on an on-going basis as a Lease/Option to Purchase because of the existence of a Due-on-Sale clause in Lansing Parkview's or Joel Ferguson's mortgage on the property." They alleged that the parties did not intend for a lease and option to purchase but, rather, a purchase of the property as demonstrated by the "down payment" and the amortization tables attached to the June 21, 2006 lease and option to purchase, the subsequent addendums to the June 21, 2006 lease, and the subsequent extensions of the June 21, 2006 option to purchase. Defendants alleged fraud in the inducement, promissory estoppel, breach of contract and warranty of good faith and fair dealing, unjust enrichment, tortious interference with contract, and breach of constructive partnership.

The trial court granted summary disposition under MCR 2.116(C)(9) in favor of plaintiff on its claims of breach of contract and breach of personal guarantee, and under MCR 2.116(C)(8) and (9) on each of defendants' counterclaims with the exception of defendants' claim of promissory estoppel. A bench trial on defendants' claim of promissory estoppel resulted in a directed verdict in favor of plaintiff. The trial court entered a judgment against defendants in the amount of $173,496.60, plus costs and fees. [*Lansing Parkview, LLC v K2M Group, LLC*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2017 (Docket No. 328507), p 1-3 (footnotes omitted).]

-4-

This Court affirmed the judgment of the trial court in that case, and also denied defendants' motion for reconsideration.[1] Our Supreme Court thereafter denied defendants' application for leave to appeal to that court.[2]

While the case was pending before this Court and our Supreme Court, the trial court determined the amount of attorney fees and costs to be awarded to plaintiff. The trial court held extensive hearings, and thereafter issued its opinion and order awarding plaintiff attorney fees and costs in the amount of $262,772.33. The trial court also denied defendants' motion for stay of enforcement without bond, and imposed sanctions upon attorney Coyer for bringing the motion.

Defendants now appeal to this Court challenging the award of attorney fees and costs. Defendants and Coyer also challenge the sanctions imposed upon Coyer.

II. ANALYSIS

A. ENTITLEMENT TO ATTORNEY FEES AND COSTS

Defendants first contend that plaintiff failed to demonstrate that it is entitled to attorney fees and costs and that the trial court therefore abused its discretion in awarding attorney fees and costs to plaintiff. Because this Court previously affirmed the trial court's finding that plaintiff is entitled to attorney fees and costs, this issue is now governed by the law of the case.

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (quotation marks and citation omitted). "A legal question may not be decided differently where the facts remain materially the same." *McNees v Cedar Springs Stamping Co*, 219 Mich App 217, 222; 555 NW2d 481 (1996). "Thus, a decision of an appellate court is controlling at all subsequent stages of the litigation as long as it is unaffected by a higher court's opinion." *Id.*, citing *Johnson v White*, 430 Mich 47, 53; 420 NW2d 87 (1988). "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Lenawee Co v Wagley*, 301 Mich App 134, 150; 836 NW2W 193 (2013). This Court has also observed that the law of the case doctrine stems from "the want of jurisdiction in an appellate court to modify its own judgments except on rehearing." *Johnson*, 430 Mich at 53. Thus, "[i]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *New Props, Inc*, 282 Mich App at 132. The law of the case doctrine

---

[1] *Lansing Parkview, LLC v K2M Group, LLC*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 328507).

[2] *Lansing Parkview, LLC v K2M Group, LLC*, 501 Mich 981; 907 NW2d 562 (2018).

controls regardless of the correctness of the prior opinion. *Sumner v General Motors Corp (On Remand)*, 245 Mich 653, 662; 633 NW2d 1 (2001).

In this case, on the final day of trial on the underlying claim, the trial court issued its ruling from the bench granting plaintiff a directed verdict on the remaining substantive issue before the trial court. The trial court stated:

> Thus, a verdict is rendered in favor of Lansing Parkview and against K2M Group LLC and Don L. Keskey on the promissory estoppel claim. Additionally, costs and reasonable attorney fees related to this hearing are awarded. We will have a *Smith* versus *Khouri* hearing on anything that is contested.

The trial court then entered the judgment, which provided, in part: "It is further ordered attorney fees and costs [are] preserved and [are] to be determined by [the] court." In this Court's opinion on appeal, this Court specifically stated that the trial court had awarded attorney fees and costs, and affirmed the judgment of the trial court, stating:

> Defendants . . . appeal as of right from a judgment entered by the trial court in favor of plaintiff . . . in the amount of $173,496.90, plus attorney fees and costs. We affirm. [*Lansing Parkview,* unpub op at 1.]

This Court denied defendants' motion for reconsideration, and our Supreme Court thereafter denied defendants' application for leave to appeal to that court.

After conducting a hearing over several dates, the trial court entered an order awarding plaintiff $262,772.33 in attorney fees and costs. Defendants now challenge the amount ordered, but also challenge plaintiff's entitlement to attorney fees and costs in *any* amount. The determination that plaintiff is entitled to attorney fees and costs in *some* amount, however, was already made by the trial court in its previous decision on the underlying merits of the case, and this Court explicitly affirmed that award. So, although defendants may challenge the reasonableness of the amount of the award for attorney fees and costs subsequently ordered by the trial court, plaintiff's entitlement to attorney fees and costs in *some* amount was already determined by the trial court and affirmed by this Court, and has become the law of the case.

## B. THE AMOUNT OF THE ATTORNEY FEES AND COSTS

Defendants next contend that plaintiff failed to demonstrate the reasonableness of the attorney fees and costs sought, and that the trial court therefore erred in awarding that amount to plaintiff. We disagree.

This Court reviews a trial court's award of attorney fees and costs for an abuse of discretion. *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Under the "American rule," which Michigan follows, attorney fees generally are not recoverable from the losing party as an element of costs. *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 678 NW2d 615 (2004). An exception exists, however, when a contract

specifically provides for the award of attorney fees; in that case, such a provision is enforceable as a matter of damages and not as an award of costs. *Jay Chevrolet, Inc v Dedvukaj*, 310 Mich App 733, 738; 874 NW2d 146 (2015); *Central Transport, Inc v Fruehauf Corp*, 139 Mich App 536, 548; 362 NW2d 823 (1985). Recovery of attorney fees provided for by contract is limited to reasonable attorney fees, and the party claiming the right to recover attorney fees under the contract must establish a prima facie case that the attorney fees are reasonable. *Zeeland Farm Services, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195-196; 555 NW2 733 (1996).

In this case, plaintiff sought attorney fees in its complaint as an element of contractual damages. The trial court found that plaintiff was entitled to attorney fees in an amount to be determined by the trial court. The trial court then determined the reasonableness of the attorney fees by applying the analysis set forth in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). This Court has discussed the application of the *Khouri* analysis as follows:

> To evaluate whether an attorney fee is reasonable, courts begin by determining the fee customarily charged in the locality for similar legal services. *Khouri*, 481 Mich at 530. To determine this amount, courts should use "reliable surveys or other credible evidence of the legal market." *Id.* at 530-531. Then, the reasonable hourly rate should be multiplied by the number of hours that were reasonably expended to reach a baseline figure for a reasonable attorney fee. *Id.* at 533. Courts should make adjustments to the figure using the factors from MRPC 1.5(a) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982). *Khouri*, 481 Mich at 532. [*Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 590-591; 884 NW2d 587 (2015).]

On appeal, defendants disagree at length with the trial court's findings regarding the amount of attorney fees and costs. Unfortunately, defendants do not identify which findings are challenged as incorrect and why.

For example, defendants argue that the trial court should have relied upon the testimony of defendants' expert, being defendant Kreskey himself, rather than plaintiff's expert. Defendants assert that plaintiff's expert exhibited "blind acceptance" of the fees and costs asserted by plaintiff. Defendants do not identify anything in the record to support this assertion. The trial court stated in its opinion that "Plaintiff's expert, Mr. Kleiman, appeared to this Court to be both credible and reliable" and further noted that it was relying upon "Mr. Kleiman's findings, that this Court found to be more credible and reliable than Defendants' expert, Don L. Keskey. . . ." Defendants give little basis for their argument, other than that Keskey had been present for all the hearings, whereas plaintiff's expert witness (understandably) had not been. "[D]oubts pertaining to credibility, or an opposing party's disagreement with an expert's opinion or interpretation of the facts, present issues regarding the weight to be given the testimony," *Surman v Surman*, 277 Mich App 287, 309; 745 NW2d 802 (2008), and generally, it is the factfinder's responsibility to determine the weight to be given testimony. See *King v Reed*, 278 Mich App 504, 535; 751 NW2d 525 (2008). We conclude that defendants have not identified any abuse of discretion by the trial court in accepting the testimony of plaintiff's expert.

Defendants further contend that plaintiff did not prove the reasonableness of the attorney fees because plaintiff's attorneys presented computer summaries with inadequate testimony to

provide the necessary specificity. Defendants also assert that the number of hours billed was grossly disproportionate to the underlying claim. Defendants, however, do not identify where in the record this occurred and do not specify which billings they dispute and why.

Defendants argue that most of the fees and costs awarded do not relate to the claims arising from the lease, promissory note, and personal guarantee, and that eliminating the unrelated fees would reduce the fees and costs to nearly zero. Again, defendants do not identify which costs were unrelated, nor do they identify any place in the record referencing these amounts. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Because defendants' general assertions do not direct this Court to any specific instance of error, review is rendered virtually impossible and we may consider the issue abandoned on appeal. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Moreover, our review of the record indicates that there is no support for defendants' contention that the attorney fees sought did not relate to the parties' underlying agreement.[3] Defendants argue that many of the attorney fees arose from plaintiff's defense of defendants' counterclaims and from plaintiff defending the judgment on appeal. The lease between the parties provides that in the event of default the defaulting party under the lease agrees to pay "all costs, expenses and reasonable attorney fees incurred by the non-defaulting party in enforcing the terms of this Lease whether or not litigation has been filed against the defaulting party." Similarly, the promissory note between the parties provides that in the event of default on the lease agreement or in carrying out the terms of the note, defendant Keskey "agrees to pay all amounts due under this Note plus all costs and actual attorney fees incurred in enforcing the terms of this Note even if litigation is not brought to enforce the terms of this Note." Likewise, the Personal Guarantee given by defendant Keskey provides that in the event of breach by the debtor under the lease, promissory note, or guarantee, defendant Keskey "shall also pay all of Lenders costs and expenses including reasonable attorney fees incurred by lender in the enforcement of the Lease, Promissory Note and/or this Guarantee." The plain language of the parties' agreement encompasses all attorney fees regardless of whether the attorney fees were incurred in litigation. Defendants' suggestion that the fees are somehow limited to only those fees incurred by plaintiff pursuing its claim before the trial court is without support. Given the broad, inclusive language of the parties' agreement regarding attorney fees, it cannot be said that the trial court abused its discretion in determining that attorney fees incurred by plaintiff in all aspects of enforcing the parties' agreement were awardable.

---

[3] Again, to the extent that defendants challenge the enforceability of the documents forming the basis of the parties' underlying agreement and establishing plaintiff's contractual right to attorney fees, these arguments are precluded by the law of the case doctrine in light of this Court's previous opinion in this case.

-8-

Further, a review of the record indicates that plaintiff presented ample evidence on the issue of the reasonableness of the attorney fees and costs during a hearing that spanned several days. In its detailed opinion, the trial court outlined its reasoning in accordance with the instructions of *Khouri*, explaining its calculations and reasoning based upon the evidence presented. Because defendants have failed to identify error in either the method or the application of the method employed by the trial court, it cannot be said that the trial court abused its discretion in determining the amount of reasonable attorney fees and costs.

## C. DISCOVERY

Defendants next contend that they were deprived of their constitutional right to due process because the trial court would not enforce their discovery requests regarding attorney fees against plaintiff. We disagree.

Michigan has a broad discovery policy, permitting the discovery of any relevant subject matter that is not privileged. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). But decisions regarding discovery are discretionary with the trial court, and this Court reviews the trial court's grant or denial of discovery for an abuse of that discretion. *Id*.

Defendants contend generally that "[a]ppellees' total refusal to provide relevant discovery information, and the Trial Court's barring of any discovery, justifies a decision or ruling that all of Appellees' claims for attorney fees and costs should be rejected. . . ." Defendants further contend that "all of Appellees' counsel refused to provide any discovery concerning their claimed fees and costs which Appellants sought through the issuance of subpoenas as well as requests to admit, and interrogatories, which were timely served on Appellees' attorneys in [advance of] the hearings." Defendants do not specify what specific information they were attempting to discover and the relevance of that information. Defendants also do not indicate where in the record the requests were denied. Again, it is not sufficient for an appellant to merely announce his position and leave it to this Court to discover and rationalize the basis for the claim. *Mudge*, 458 Mich at 105. Further, this Court is not obligated to search the record for factual support for a party's claim. *Barrow v Detroit Election Comm*, 305 Mich App 649, 682; 854 NW2d 489 (2014).

In any event, a review of the record indicates that although defendants were not permitted to engage in discovery in the manner sought, defendants were given ample opportunity to obtain any relevant information about the attorney fees and costs sought by plaintiff. At the evidentiary hearing to determine the amount of attorney fees and costs, which began on March 10, 2016, defendants informed the trial court that they had filed motions regarding discovery. The trial court declined to hear the motions, finding that defendants had failed to notice the motions and that the proof of service was defective. Defendants argued that they had given discovery requests to plaintiff that remained unanswered, and the following exchange took place:

> THE COURT: I have no idea what additional discovery anybody could possibly want in this case. Sir, I don't generally grant discovery in Smith versus Khouri hearings. We set them out and you get your information together. The rules are very clear on what I need to hear, and it is in regard to the bill that you were provided, what the objections are, and is this at a rate that is supposed to be – or is

regularly used based on the number of years and experience of counsel, et cetera, so I don't know what other discovery you need. We have had intense hearings for the last two, three years.

* * *

MR. COYER: Discovery is related also to the subpoenas. Discovery requests information, not a lot of questions, which I think you'll see if you have a chance to take a look at the discovery. In going through the invoices, the summary invoices that were presented by attorneys Reid & Reid, this is not the detail that's required by Smith versus Khouri. Smith versus Khouri requires details, and this is Adair. This is the Adair case. This is other cases that have simply said that an attorney cannot simply submit invoices without detailed billing to justify a reasonableness of the fees that are being requested. So there is so little detail in the – in Messrs Reid & Reid bill that it's impossible to know whether or not they were engaged in the activities that were the center of this case.

THE COURT: Sir, that is your argument throughout this case, that it's improper. You use the Adair case and you make those arguments in regard to my decision making of the facts and details of this this case as to what I can order or not. I'm not going to cause any further delay in this matter. I'm not going to allow further discovery. . . .

* * *

MR. COYER: Your Honor, the last question I have for you – last issue is that in this discovery – and I will try to end the argument at this point, the discussion, and that is that the issue of retainers of Messrs Reid & Reid, probably less so with Mr. Shafer, begs an important question. We need the retainer agreements, if there are retainer agreements from Messrs Reid & Reid, because there's no point in someone being reimbursed twice for the same work and there needs to be some specification of what work has been done.

This has no impact on [Lansing Parkview, LLC]. It is merely a way to essentially double recover on the part of the attorneys who are part of this case.

THE COURT: I understand. That's why we have direct and cross and certainly you can get that information. If I want more information on it, I'll ask them for further documentation. You can even say, can you bring that here? I'm not going to cause delay. Again, this is all part of why Smith versus Khouri was established, for exactly the reasons that you've made a record of.

Later in that same hearing, the trial court stated:

THE COURT: So as to your subpoenas, I'm not disregarding them. I think that was one of the questions that's really outstanding. I'm just saying that I'm going to allow – because of all of these things that were – I don't want any further delay, first of all. I don't think this warrants any further delay. In terms of what you've

-10-

requested, you certainly can elicit that testimony and ask that those things be brought again, if you need them, and I'll tell you, yeah, bring them in. We're not going to finish this hearing.

Thus, the trial court determined that formal discovery on the post-judgment issue of attorney fees and costs was unwarranted, but directed defendants to request whatever information they wanted and the trial court would direct plaintiff to produce that information.

At the continued hearing held May 19, 2016, defendants again raised the issue of discovery:

MR. COYER: Your Honor, with all due respect, I'm ready to move on, but his issue of discovery is a critical issue. Perhaps we can take that up later.

THE COURT: What is it that you're missing, sir, that you need? You don't get your checks, I'm ruling on that now. No checks.

MR. COYER: Do we get invoices?

THE COURT: No. You get the invoice – I'm not sure what you mean by that. If you want itemized billing, it appears they've given it to you. Do you have any itemized billing that they have not received?

* * *

MR. SHAFER: They have it all.

THE COURT: If they have it all, then, sir, that's what they have and you can make your best argument to me at closing, because if you don't – if you don't have it by now, then they don't get to make their case, and I guess maybe then you've got some points on your side, sir. Okay? Because summaries are not allowed. We know that, right? Okay. So you've turned over everything and all of the attorneys on your side have turned over everything, is that correct?

MR. SHAFTER: Yes.

THE COURT: End of story. Now you can make your arguments at closing and you can cross examine the heck out of this, okay? Move on.

And further:

THE COURT: Well, Mr. Shafer is here. What about Mr. Reid and Mr. Reid, did you subpoena them?

MR. COYER: Yes, we did.

-11-

THE COURT: Then they'll have to show up and you'll ask your questions. . . . They'll be here when they are supposed to be here to answer your questions or I'll have an officer pick them up.

Thus, although the trial court did not permit the formal discovery that defendants sought, the trial court repeatedly informed defendants that it would enforce their right to obtain any relevant information. And again, defendants do not identify any specific information that they were denied, only that they were not permitted to proceed with discovery in the manner of their choosing. A trial court's decision to grant or deny discovery will only be overturned when the trial court has abused its discretion. *Augustine*, 292 Mich App at 419. In this case, there has been no demonstration that the trial court abused its discretion in limiting formal discovery on the post-judgment issue of attorney fees and costs.

## D. RIGHT TO SELF-REPRESENTATION

Defendant Keskey also contends that the trial court violated his constitutionally protected rights to due process and equal protection by not permitting him to represent himself. We disagree.

Defendants raised this issue in their first appeal to this Court. This Court addressed the issue as follows:

V. REMOVAL OF ATTORNEY OF RECORD

Defendants argue that the trial court wrongfully required Keskey to withdraw as attorney of record for purposes of the trial. We review a preserved claim of constitutional error de novo. *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004).

The trial court, sua sponte, removed Keskey as attorney of record because he was also a witness. MRPC 3.7(a) precludes a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness except" where (1) the testimony relates to uncontested issues, (2) the testimony relates to the nature and value of legal services rendered in the case, or (3) disqualification of the lawyer would work substantial hardship on the client. The purpose of the rule is to prevent any problems that would arise from a lawyer having to argue the credibility and effect of his own testimony, to prevent prejudice to the opposing party that might arise therefrom, and to prevent prejudice to the client if the lawyer is called as an adverse witness. *Smith v Arc-Mation, Inc.*, 402 Mich 115, 119; 261 NW2d 713 (1978); *Kubiak v Hurr*, 143 Mich App 465, 471, 475; 372 NW2d 341 (1985); Comment to MRPC 3.7.

Our Constitution, Const. 1963, art. 1, § 13, however, guarantees citizens the right to appear pro per, and no distinction is made between lawyers and other citizens with respect to that right. When the exclusion of attorney testimony would work a substantial hardship on a party, MRPC 3.7 calls for a balancing of the rights of the respective parties. Plaintiff's counsel did not bring a motion to disqualify Keskey and expressed no concern about which of the "5 attorneys of

-12-

record" tried the case. Keskey, on the other hand, argued that it would present a substantial hardship for any of the other attorneys of record to try the case with short notice because the intent had always been for Keskey to try the case and none of the other attorneys of record were prepared to try the case. Even assuming, however, that the trial court abused its discretion by refusing to allow Keskey to try the case, defendants have failed to identify any prejudice resulting from the trial court's exclusion of Keskey from representing himself. Thus, any error was harmless. [*Lansing Parkview,* unpub op at 6.]

To the extent that Keskey raises the same issue involving the same occurrences before the trial court that were already addressed by this Court in its previous decision, Keskey is precluded by the law of the case doctrine from doing so. See *New Props, Inc*, 282 Mich App at 132. To the extent that Keskey points to subsequent occurrences before the trial court that have not been ruled upon by this Court, the law of the case doctrine does not necessarily bar this Court from considering those allegations if the facts are now different. See *McNees*, 219 Mich App at 222.

In its previous opinion, this Court determined that Keskey had not shown that he was prejudiced by being precluded from acting as his own advocate during the hearings before the trial court, and that therefore any error was harmless. In this appeal, Keskey once again does not identify any prejudice arising from any new instances of being barred from representing himself before the trial court in the post-judgment proceedings; for example, he does not claim that he was not adequately represented in the post-judgement proceedings. Once again, absent any demonstration of prejudice arising from the trial court barring Keskey from representing himself during the hearings, any error was harmless.

## E. SANCTIONS

Lastly, defendants and appellant Coyer contend that the trial court abused its discretion in imposing sanctions upon Coyer. We disagree.

After the trial court entered its initial judgment in this case in June 2015, defendants appealed to this Court, then moved for, and were granted by the trial court, a stay of enforcement pending appeal to this Court without posting a bond. Plaintiff filed a motion in this Court requesting that defendants be required to post a bond to obtain the stay of enforcement. This Court granted plaintiff's motion, and granted the stay of enforcement on the condition that defendants post a bond with the trial court in the amount of $216,870.00, as required by MCR 7.209(F)(1).[4]

Thereafter, the trial court entered its post-judgment order for attorney fees and costs. Defendants moved for reconsideration of that order before the trial court, and once again moved to stay enforcement "for the duration of rehearings and appeals filed or to be filed in this case, and without the necessity of the filing by K2M/Keskey of a bond or surety." Plaintiff opposed

---

[4] *Lansing Parkview, LLC v K2M Group, LLC*, unpublished order of the Court of Appeals, issued November 18, 2015 (Docket No. 328507).

the motion, arguing that the identical issue had already been decided by this Court's earlier order.

The trial court denied the motion for stay without bond and imposed sanctions on Coyer for bringing the motion. Contrary to defendants' assertion on appeal that the trial court "provided no reasoning whatsoever for issuing sanctions in her May 17, 2017 bench ruling," the trial court in fact stated in its May 17, 2017 bench ruling:

Quite honestly, I'm surprised by the filing of this given the previous ruling by the Court of Appeals. The Court of Appeals was very clear the last time we had this issue, and I have to agree with Mr. Reid's arguments. I understand that defendants disagree with Mr. Reid's arguments but they're in line with what the appellate court has said, and there have been changes in the court rules since. The stay is denied unless the bond is posted as required with 110 percent.

There's also a request for attorney fees. Honestly, I think if I don't give attorney fees we're going to continue to see litigation that's unnecessary and I'm going to sanction you, Mr. Coyer, four hours, a thousand dollars paid to plaintiff within 30 days.

As discussed, Michigan follows the American rule regarding the imposition of attorney fees and costs, which provides that attorney fees ordinarily are not recoverable unless a statute, court rule, or common-law exception provide to the contrary. *Khouri*, 481 Mich at 526; *Haliw*, 471 Mich at 706. An exception to the American rule is the trial court's inherent authority to sanction a litigant or attorney for misconduct by assessing attorney fees. *Persichini v William Beaumont Hosp*, 238 Mich App 626, 639; 607 NW2d 100 (2000); see also *Ford Motor Co*, 313 Mich App at 595. The purpose of imposing sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v VanSickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (citation omitted). When awarding attorney fees as a sanction for misconduct, the trial court should put the party requesting fees "in the position they would have been in absent the misconduct," balancing the "harshness of the sanction against the gravity of the misconduct." *Persichini*, 238 Mich App at 642-643. A trial court's exercise of its authority to sanction a litigant and its counsel is reviewed by this Court for an abuse of discretion. See *Maldonado*, 476 Mich at 388.

Here, in their motion for stay without bond, defendants sought the same relief that this Court denied in this case 18 months earlier. The trial court was therefore justified in finding that defendants' motion warranted the imposition of sanctions. The amount of the sanctions was four hours of attorney fees at the rate of $250, which plaintiff's counsel asserted at the hearing was a conservative estimate of the time spent in responding to the motion, and therefore was in keeping with MCR 2.114(E) and was not overly harsh.

The trial court therefore did not abuse its discretion.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola